**UNITED STATES of America, Appellee,**

v.

**Frederick James ONE FEATHER, Appellant.**

No. 82–2339.

United States Court of Appeals,
Eighth Circuit.

Submitted March 22, 1983.

Decided March 28, 1983.

Drew C. Johnson, Aberdeen, S.D., for appellant.

Philip N. Hogen, U.S. Atty., R.P. Murley, John J. Ulrich, Asst. U.S. Attys., Sioux Falls, S.D., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Frederick James One Feather was convicted by a jury of rape on an Indian reservation in violation of 18 U.S.C. §§ 1153 and 2031 (1976). The District Court[1] sentenced him to 25 years' imprisonment. On appeal One Feather contends that the trial court erred in (1) denying his motion to appoint an independent expert, (2) admitting prejudicial photographs of the victim's injuries, and (3) limiting the cross-examination of the victim. We reject One Feather's contentions and affirm.

1. The Hon. Donald J. Porter, United States District Judge for the District of South Dakota.

## I.

On the morning of July 15, 1982, Rhea Jean Brown Wolf, an Indian, was walking into town when One Feather, with whom she was previously acquainted, drove up and offered her a ride into town. Upon entering the car she discerned that he had been drinking. One Feather offered her a beer; she refused and asked to be let out of the car. One Feather sped up the car, turned off on a side road, and hit her on the head three or four times with his fists. He then hit her with some sort of an instrument, causing a laceration on her head and knocking her unconscious. When she awoke, she was lying partly undressed in a ditch, and One Feather was on top of her. After completing the act of sexual intercourse, One Feather told Brown Wolf to get dressed. She again lost consciousness. Upon regaining consciousness Brown Wolf found herself again in the car. She attempted to flee from the moving car, sustained scraping injuries to her head, arms, and leg, and lost consciousness. When she came to, One Feather told her he was taking her home and would say he found her in her present condition. When they arrived, Brown Wolf's brother assisted her from the car into her home. She was taken to the hospital in an ambulance.

One Feather testified that Brown Wolf had solicited the ride, asked if he had any beer, and initiated and consented to the act of sexual intercourse. He alleged that her scraping injuries were sustained on the ride home when she got sick, opened the car door before he could stop the car, and fell out. He was unable to explain how she acquired the head laceration.

## II.

At trial, the government's expert witness identified both "A" and "O" blood group substances in one stain on the victim's underwear. He testified that the presence of these substances was consistent with the presence of seminal stains from One Feather, "an 'A' type secretor," and vaginal secretions from Brown Wolf, "an 'O' type secretor." On cross-examination he testi-fied that these substances could also indicate the presence of seminal fluids from both the defendant and a third person, who would have to be "an 'A' type secretor." He also testified that no specific test existed for identifying vaginal secretions. The expert's report also identified blood stains on Brown Wolf's clothing, some of which were her blood type and therefore resulted from her injuries, but tests run on one stain were inconclusive as to blood type because the amount of blood was too limited to make comparisons. The blood-stain report was not introduced in evidence.

One Feather contends that had the District Court granted his pretrial motion for appointment of an independent expert under 18 U.S.C. § 3006A(e) (1976), he could have buttressed his defense of consent with the following arguments: (1) the unidentified blood stain came from a third person who had attacked Brown Wolf immediately before or after the alleged rape, accounting for the laceration on her head; and (2) the two types of fluid stains on Brown Wolf's clothing came from two types of semen, indicating recent sexual intercourse with a third person and impeaching Brown Wolf's testimony.

■ The defendant has the burden of satisfying the court that expert services are necessary to present an adequate defense. *United States v. Sailer*, 552 F.2d 213 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). Expert services need not be authorized for a "fishing expedition," but should be authorized "when underlying facts reasonably suggest that further exploration may prove beneficial to the accused in the development of a defense to the charge." 552 F.2d at 215, quoting *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir.1970).

■ The underlying facts in this case do not suggest the slightest support for One Feather's theories that a third person may have assaulted Brown Wolf or had sexual intercourse with her at or about the time of the alleged rape. Furthermore, as to his first theory, no reasonable person could be-

lieve that a hypothetical assault occurred before the alleged rape. It is highly unlikely One Feather would engage in consensual sexual intercourse with Brown Wolf had she been suffering from a head laceration, and it stretches the limits of credibility to suggest that someone would have assaulted Brown Wolf after she returned home while she was in such an incapacitated condition. As to the second theory, the government's expert witness testified that no specific test existed for identifying vaginal secretions, thus indicating that no expert testimony could definitely establish that the two types of blood-group stains came only from seminal secretions.

The chance that an appointed expert would have helped One Feather's case is remote at best. The trial court did not abuse its discretion in declining to appoint an expert.

### III.

■ The trial court denied One Feather's request to exclude from evidence photographs that depicted Brown Wolf's scraping wounds. One Feather argues that the pictures were immaterial because they occurred after the rape and thus had no bearing on the probability that the act of rape occurred, and that, although they would be probative as to whether an assault occurred after the alleged rape, no charges of assault were made. Additionally, the pictures were unfairly prejudicial, it is said, because they would tend to arouse the jury's sympathy for the complaining witness and suggest an improper basis for conviction.

The pictures of the scraping injuries had some probative value. They related to the circumstances surrounding the event and thus assisted the jury in evaluating the credibility of the witnesses. Although the injuries were sustained after the alleged rape, and that fact was not disputed by One Feather, the injuries were consistent with Brown Wolf's testimony that the act was not consensual. We hold the District Court did not abuse its discretion in admitting the photographs. As the defendant admits in his brief, the injuries depicted in the photographs were "superficial abrasions and lacerations." The evidence was not unfairly prejudicial.

### IV.

■ On direct examination by the government Brown Wolf testified that she was divorced and had an infant son. On cross-examination, defense counsel was prohibited from inquiring into where her marriage and divorce took place. Defense counsel stated that he had been unable to find a marriage or divorce record on Brown Wolf and believed that she had lied. He desired to impeach her credibility on this point.

The District Court excluded the evidence under Rule 403 of the Federal Rules of Evidence, finding that the probative value of the evidence was substantially outweighed by the danger of prejudice. The court reasoned that should the cross-examination prove fruitful, the evidence would bring to the jury's attention the fact that the victim had an illegitimate child. Evidence of the victim's past sexual behavior would thus come in indirectly, contrary to the policy of Rule 412 of the Federal Rules of Evidence, resulting in unfair prejudice. The court also thought the evidence was collateral and would put the onus on the victim to come forward with proof of marital status, resulting in an expenditure of time and confusion of issues disproportionate to the relevancy of the point.

We conclude that the trial court did not abuse its discretion in prohibiting cross-examination of the victim on her marital status. The policy of Rule 412, to guard against unwarranted intrusion into the victim's private life, may be taken into account in determining the amount of unfair prejudice under Rule 403. Furthermore, the evidence concerned a collateral matter, the general credibility of the witness, not her credibility with respect to her specific testimony concerning the alleged rape.

Accordingly, the judgment of conviction is affirmed.