2005 UT 50

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jonathan TARRATS, Defendant and Appellant.**

**No. 20030905.**

Supreme Court of Utah.

Aug. 9, 2005.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Michael D. Bouwhuis, Ogden, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Jonathan Tarrats, the defendant in a rape prosecution, appeals the trial court's interlocutory order excluding evidence that the accusing witness had allegedly made a prior false rape claim against another man in an unrelated incident. The sole issue on appeal is whether the trial court abused its discretion in finding Tarrats' evidence that the prior claim was false inadmissible under Utah Rules of Evidence 412 and 403. We affirm the ruling of the trial court.

## BACKGROUND

¶ 2 Tarrats and his accuser were introduced to each other by a mutual friend, Jami Gardner. Shortly after the introduction, the two agreed to go on a date. The accuser picked Tarrats up from his place of work at around 11 p.m. The two then drove to Tarrats' apartment, where they spent the evening watching videos. Both agree that consensual kissing activity took place during the evening. The accuser later asked to stay the night at Tarrats' apartment due to her discomfort at driving home alone at such a late hour, but repeatedly informed him that no sexual contact would take place during the night. Tarrats agreed to permit her to sleep over.

¶ 3 The accuser alleges that Tarrats continued to make sexual advances, which she rebuffed, but that he ultimately refused to take no for an answer, pulled down her pants, ripping her zipper in the process, and raped her. Immediately after the encounter, the accuser returned to her own home. The following morning, she reported the incident to her roommate, Ms. Gardner, and her roommate's mother. She then sought medical attention at a nearby hospital, where a rape examination was performed. She also reported the incident to the police, who commenced a criminal investigation of the matter.

¶ 4 As part of this police investigation, the accuser was fitted with a wire to record a planned confrontation with Tarrats. The accuser's friend, Ms. Gardner, helped arrange this meeting at a nearby mall, and she further assisted in securing the wire under the accuser's clothing. The accuser testified at a preliminary hearing that Tarrats admitted in the recorded conversation that he knew that she had not consented to the sex but that he had continued anyway because he was sexually excited.

¶ 5 Tarrats now contends that the accuser consented to the sex through her physical behavior, though he admits that she verbally indicated her refusal. He suggests that the reason his accuser is now claiming that he raped her is that she was offended when he called her by her friend's name after the sexual encounter.

¶ 6 On April 10, 2003, Tarrats moved in limine for a ruling authorizing him to impeach the accuser's testimony with evidence that she had falsely accused another man of rape in an unrelated prior incident. His sole evidence that the prior allegation was untruthful came from the testimony of Ms. Gardner, who admitted that she no longer liked the accuser due to several points of interpersonal conflict unrelated to the trial.

¶ 7 The trial court held a series of evidentiary hearings on the matter, hearing testimony from the accuser; several individuals to whom she had reported the previous rape, including Ms. Gardner; a police detective investigating the current charges against Tarrats; and a private investigator hired by the defense.

¶ 8 The accuser testified at one of the hearings that she had told the truth to her mother and those of her friends in whom she had confided when she said that she had been raped by an unknown assailant in the bathroom of a home during a New Year's party on January 1, 2001, and denied ever having recanted that allegation. She never reported the incident to police. The accuser's mother and friends all likewise testified that the accuser had informed them of the incident and had never later recanted her story.

¶ 9 The only witness to testify that the accuser had recanted was Ms. Garnder. According to Ms. Gardner, the accuser had admitted to her that she had engaged in consensual sex at the New Year's party and had only told people that she had been raped to avoid upsetting her then boyfriend. Ms. Gardner further testified that, despite her participation in the police investigation, she always doubted whether Tarrats had really raped the accuser.

¶ 10 The prosecutor was able to elicit from Ms. Gardner that she did not report to detectives her suspicions that the accuser was falsely alleging a rape claim against Tarrats and that the accuser also had recanted a previous rape claim until nearly a year after the Tarrats investigation began, shortly after discovering that the accuser had kissed Ms. Gardner's boyfriend. She further admitted

that she was no longer friends with the accuser because the accuser had kissed her boyfriend and owed her money, among other reasons unrelated to the case against the defendant.

¶ 11 Ms. Garnder claimed that she did not report the recantation or her doubts about the veracity of the instant allegation to the investigating police detectives, despite having numerous opportunities to do so. She said that she was able to report the recantation of the prior rape claim to defense counsel, however, because the private detective the defense had hired called her on her cell phone and asked her about it. She claimed that the private detective learned of the recantation from another friend of Ms. Gardner and the accuser.

¶ 12 The private investigator, however, testified that he learned of the recantation through Ms. Gardner, who had contacted him and reported the recantation herself. The friend whom Ms. Gardner claimed had told the private investigator about the recantation also denied under oath ever having done so, and further denied ever hearing the accuser recant. The witness also testified that she and the accuser were no longer friends for reasons unrelated to either the current proceedings or the prior allegation.

¶ 13 Thus, without Ms. Gardner's testimony that the accuser had recanted a prior rape allegation, Tarrats would have no basis to allege that the prior allegation was false, and testimony about the prior allegation and recantation would be excluded under Utah's rape shield law, Utah Rule of Evidence 412. The question before the judge was whether Ms. Gardner's testimony was sufficient to prove by a preponderance of the evidence that the accuser had made a prior false allegation. He concluded that it was not, and held the evidence inadmissible under rules 412 and 403.

¶ 14 First, the court reasoned that, since admissibility of a prior rape claim turns on the truthfulness of that claim, and since the burden is on the proponent to show that the probative value of evidence outweighs its prejudicial nature, evidence that a victim had falsely accused another individual of raping her in the past would be inadmissible unless the proponent made a threshold showing that the prior allegation was false. Tarrats, it ruled, failed to show by a preponderance of the evidence that the allegation was false, so Ms. Gardner's testimony about the prior incident would not be admitted at trial.

¶ 15 The court next stated that, even if the rape shield law had not applied, the evidence still would not be admissible because the prejudicial nature of the testimony outweighed its probative value in this case, in violation of Utah Rule of Evidence 403. Tarrats appealed the ruling to this court. We have jurisdiction pursuant to Utah Code Ann. § 78–2–2.

## STANDARD OF REVIEW

¶ 16 Trial courts have "broad discretion in restricting the scope of cross-examination, and on appeal the trial court's ruling ... is reviewed under an abuse of discretion standard." *State v. Gomez*, 2002 UT 120, ¶ 12, 63 P.3d 72 (internal quotations omitted). "Likewise, 'trial courts have wide discretion in determining relevance, probative value, and prejudice.'" *Id.* (quoting *State v. Kell*, 2002 UT 106, ¶ 27, 61 P.3d 1019). Therefore, we " 'will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the trial court so abused its discretion that there is a likelihood that injustice resulted.'" *Id.* (quoting *State v. Gentry*, 747 P.2d 1032, 1035 (Utah 1987)).

## ANALYSIS

¶ 17 The question before us today is whether the trial court abused its discretion in excluding Ms. Gardner's testimony under Utah's rules of evidence. We hold that it did not.

¶ 18 First, the trial court did not act outside its discretion in requiring Tarrats to demonstrate the falsity of the accuser's prior allegation by a preponderance of the evidence, nor did it do so in determining that Tarrats failed to establish its falsity by that standard.

¶ 19 Second, the trial court did not abuse its discretion in ruling the evidence inadmissible under Utah Rule of Evidence 403. It

concluded that, because of the factual dissimilarities between the two accusations, any probative value the recantation of the prior allegation could offer would be low and would be outweighed by its highly prejudicial nature and thus should be barred by the rule. We find no abuse of discretion in this conclusion. We discuss both reasons for our holding in greater detail below.

## I. UTAH RULE OF EVIDENCE 412: UTAH'S RAPE SHIELD LAW

¶ 20 We adopted Utah Rule of Evidence 412, patterned after the federal rape shield rule, to ensure that sexual assault victims are not "deterred ... from participating in prosecutions because of the fear of unwarranted inquiries into the victim's sexual behavior." Utah R. Evid. 412 advisory comm. note. The rule "reflects the recognition that evidence of the victim's unchastity is ordinarily of no probative value on the issue of whether a rape or sexual assault occurred." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 412.02[1] (2d ed.2004). The following evidence is inadmissible under rule 412:

(a)(1) evidence offered to prove that any alleged victim engaged in other sexual behavior; and

(a)(2) evidence offered to prove any alleged victim's sexual predisposition.

Utah R. Evid. 412(a).[1]

¶ 21 In adopting the rape shield rule in Utah, we recognized and agreed with the general consensus among courts that an alleged victim's prior sexual conduct " 'is simply not relevant to any issue in the rape prosecution including consent.' " *Id.* advisory comm. note (quoting *State v. Johns,* 615 P.2d 1260, 1264 (Utah 1980)). Even where such evidence bears some marginal relevance, "it has 'an unusual propensity to unfairly prejudice, inflame, or mislead the jury' and is 'likely to distort the jury's deliberative process,' " *id.* (quoting *State v. Dibello,* 780

P.2d 1221, 1229 (Utah 1989)), and should therefore be excluded.

¶ 22 This rule applies to "all activities that involve actual physical conduct ... or that imply sexual intercourse or sexual contact." *Id.; see, e.g., United States v. One Feather,* 702 F.2d 736, 739 (8th Cir.1983) (holding evidence of the birth of an illegitimate child inadmissible). It also excludes all evidence that "may have a sexual connotation for the fact finder." Utah R. Evid. 412 advisory comm. note. Thus, evidence of a victim's use of contraceptives, affliction with venereal disease, or mothering of an illegitimate child are all deemed too sexually charged to be admitted under this rule. *Id.*

¶ 23 The advisory committee notes to rule 412 also provide that, notwithstanding the rule's careful circumscription of all evidence of sexual behavior, "[e]vidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412." *Id.* Though not excluded under rule 412, the evidence will only be admitted if it survives the tests of the other rules of evidence. *Id.*

¶ 24 While "evidence of false statements of unrelated sexual assaults are not excluded by the rape shield rule because they are not evidence of sexual conduct" per se, *State v. West,* 95 Hawai'i 452, 24 P.3d 648, 654 (2001), we further recognize that any potential probative value these prior allegations of rape bear depends upon them being false, *see, e.g., Hughes v. Raines,* 641 F.2d 790, 792 (9th Cir.1981). A truthful prior allegation of rape carries no value whatsoever in the trial process, and its admission into evidence bears a high potential for humiliating the accuser, discouraging victims from reporting sexual crimes against them, and introducing irrelevant and collateral issues that may confuse or distract the jury. It was to avoid these very problems that rule 412 was adopted.

¶ 25 Thus, in order to ensure that such improper evidence is not admitted, a

---

1. The rule does provide limited enumerated exceptions to the blanket inadmissibility. These exceptions allow specific instances of the accuser's past sexual behavior to be admitted, but they do not include incidents of past sexual abuse.

*See* Utah R. Evid. 412(b)(1)-(3). The defendant does not claim that his evidence qualifies under one of the enumerated exceptions, so we do not discuss the exceptions in detail.

defendant who wishes to impeach his accuser's credibility with the accuser's prior allegation of rape must first demonstrate by a preponderance of the evidence that the allegation was false. Not requiring this threshold showing would severely undercut rule 412's purposes by allowing defendants to circumvent the prohibition on introducing either sexually charged information, or simply irrelevant, humiliating information, about the accuser by slipping such information into evidence with only a bald allegation that the prior accusation was false. Trial judges are granted wide discretion in limiting the scope and extent of cross-examination and the admissibility of evidence to that end.

¶ 26 Thus, in accord with other jurisdictions that have decided the matter,[2] we hold that protection of the purposes of our rape shield law requires that the defendant make a threshold showing of the falsity of prior allegations by a preponderance of the evidence before he can use those allegations to impeach the accuser's testimony at trial. Through this mechanism, we can better ensure that admissible evidence of false rape allegations is brought before a jury, and that inadmissible evidence of truthful prior allegations is not introduced to confuse or prejudice their truth-uncovering role.

¶ 27 Our holding today is in conformity with our prior case law. In *State v. Martin*, 1999 UT 72, ¶ 16, 984 P.2d 975 (*Martin I*), the defendant appealed his rape conviction on the grounds that he was not able to conduct adequate discovery of an issue that may have been central to his case: the identity of a man the victim had alleged had raped her on a previous occasion. We agreed with Martin and remanded the case back to the trial court for further discovery on the matter. *Id.* at ¶ 17. Tarrats argues that, because the discovery in that case centered on determining the name of a man the accuser claimed had raped her in a separate prior incident, we are now compelled to conclude that rule 412 does not exclude the evidence he seeks to admit here. We disagree.

¶ 28 As explained above, we agree that while prior *false* rape claims are not excluded under rule 412, prior truthful rape claims are inadmissible. The defendant fails to note that our holding in *Martin I* was merely that the defendant "was entitled to discover the information he sought, which carried 'strong' impeachment value and could significantly impact 'the central issue of the case—[whom] to believe about the circumstances of the sexual contact.'" *State v. Martin*, 2002 UT 34, ¶ 24, 44 P.3d 805 (*Martin II*) (quoting *Martin I*, 1999 UT 72 at ¶ 16, 984 P.2d 975). We did not say that he was automatically entitled to introduce any evidence he found. Instead, we simply said that he was entitled to *discover* the information and, "[i]f [he found] any new *admissible* evidence, the trial court must then ... determine if Martin is due a new trial." *Martin I*, 1999 UT 72 at ¶ 17, 984 P.2d 975 (emphasis added). We remanded the case to give Martin an opportunity to perform adequate discovery of this issue.

¶ 29 Though unable to identify the prior accused, Martin did discover that the alleged rape arose out of an incident in which the accuser had accepted a ride from a stranger. *Martin II*, 2002 UT 34 at ¶ 35, 44 P.3d 805. He argued on remand to the trial court that he should be permitted to introduce evidence that she accepted a ride from a stranger in the past in order to impeach her testimony that she was not the type of person to get in the cars of men she did not know. *Id.* at ¶ 26. The trial court denied his motion, finding that the evidence, among other problems, bore too many sexual overtones because the accuser had alleged that this incident had led to her being raped. *Id.* at ¶ 27. Martin appealed once again to this court, and it was from this posture that we heard Martin's case a second time.

---

2. *See, e.g., Quinn v. Haynes*, 234 F.3d 837, 846 (4th Cir.2000) (upholding the state court's determination that the defendant must prove by a preponderance of the evidence that the prior rape allegation was false); *Hughes*, 641 F.2d at 792 (requiring that it must be "shown convincingly" by the defendant that the prior allegations were false); *Morgan v. State*, 54 P.3d 332, 339 (Alaska Ct.App.2002) (applying a preponderance of the evidence standard and recognizing that standard to be used in the majority of jurisdictions); *West*, 24 P.3d at 659–60 (same).

¶ 30 On this appeal, we disagreed with the trial court and ruled that Martin should be able to introduce the evidence of his accuser accepting a ride so long as no mention was made of the rape allegation. *Id.* at ¶ 43. We there acknowledged that "rule 412 should be construed broadly in order to fully effectuate the policy considerations underlying its prohibitions." *Id.* at ¶ 42. We further characterized any reference to the first alleged rape as "inadmissible information" when we explained that the trial court could "direct[ ] the scope of questioning ... to ensure that evidence prohibited by rule 412 is not considered by the jury." *Id.*

¶ 31 Specifically because evidence of the prior alleged rape would not be introduced, the evidence about accepting a ride did not violate "rule 412's prohibition on sexual proclivity evidence" and was admissible. *Id.* at ¶ 43. Thus, our previous case law on the subject conforms to our holding today that allegations of prior false rape claims are inadmissible under rule 412 unless their falsity can be demonstrated to some standard of proof. We now hold that the requisite standard is proof by a preponderance of the evidence.

¶ 32 We agree with the trial court's determination that Tarrats failed to satisfy the necessary threshold showing in this case. The support for his allegation that the accuser had previously fabricated a rape charge consisted of the testimony of a single individual who provided testimony that was inconsistent with her prior behavior and with the sworn testimony of several other people, including the defense's own private investigator.

¶ 33 This witness, Ms. Gardner, reported the supposed recantation to the police nearly a year after the investigation against Tarrats had begun, but only within weeks of discovering that the accuser had kissed her boyfriend. Further, she also testified that she never believed Tarrats had raped her friend, yet she had participated with the police in the investigation and gathering of evidence against the defendant for the ten months leading up to her sudden change of attitude.

¶ 34 In contrast, three other people, some of whom dislike or are otherwise not friends with the accuser, testified that the accuser had never recanted her claim that she had been raped on a previous occasion. With only the controverted testimony of Ms. Gardner to substantiate Tarrats' claim that the accuser made. a false accusation of rape against another individual, the trial court did not abuse its discretion in determining that Tarrats failed to show by a preponderance of the evidence that the accusation was false and, therefore, admissible under rule 412.

¶ 35 Tarrats claims that excluding this impeachment evidence amounts to a violation of his right to confront witnesses, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court, however, has made clear, in the face of an objection to an exclusion determination made under Michigan's rape shield law, that " '[t]he right to present relevant testimony is not without limitation. That right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' " *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (further citation omitted)).

¶ 36 Judges " 'retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Thus, the defendant's right to confront witnesses is not absolute. *Id.* Many evidentiary rules necessarily limit to some degree a defendant's ability to question witnesses and introduce evidence. So long as impingements upon a defendant's constitutional rights pursuant to these evidentiary rules are not "arbitrary or disproportionate to the purposes they are designed to serve," they are constitutional. *Stephens v. Miller,* 13 F.3d 998, 1002 (7th Cir.1994).

¶ 37 We feel that rule 412 promulgates a legitimate interest in the trial process, that the threshold showing of falsity serves that

interest, and that the trial court exercised reasonable discretion in determining that the evidence failed the rule 412 test for admissibility.

¶ 38 Further, even had the defendant succeeded in showing by a preponderance of the evidence that the accuser had falsely accused another of a sexual assault in the past, we feel that the trial court did not abuse its discretion in determining the evidence to also be inadmissible under rule 403 because the prior claim was so attenuated factually from the present case that its probative value is low and overwhelmed by the potential prejudicial effect.

## II. INADMISSIBILITY OF THE EVIDENCE UNDER RULE 403

¶ 39 We have held that " '[w]e will not overturn the trial court's ruling [on the application of Rule 403] unless the abuse of discretion is so severe that it results in a likelihood of injustice." *State v. Branch,* 743 P.2d 1187, 1189 (Utah 1987) (alteration in original) (quoting *State v. Knowles,* 709 P.2d 311, 312 (Utah 1985) (further citation omitted)).

¶ 40 We decline to overturn the trial court's ruling on this matter because, even if Utah's rape shield law did not bar Tarrats from using the proffered evidence, the court did not abuse its discretion in holding that rule 403 does. This rule provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Utah R. Evid. 403.

¶ 41 We have held that impeaching a witness on "specific instances of past conduct that is probative of the witness's character for truthfulness or untruthfulness, and therefore admissible under rule 608(b), may still be limited or prohibited by the trial court in its sound discretion under rule 403." *State v. Gomez,* 2002 UT 120, ¶ 33, 63 P.3d 72.

¶ 42 Here, any evidence of the previous allegation, even if proven to be false, would be inadmissible because its probative value would be substantially outweighed by its prejudicial effect. While we agree that prior false allegations of rape may in many instances be highly probative of truth, *see, e.g., Martin I,* 1999 UT 72 at ¶ 16, 984 P.2d 975, such determinations must be made on a case by case basis according to the facts presented. Here, the prior allegation, even if false, would be of little probative value because the facts surrounding the prior allegation are so attenuated from the facts of the case before us today.

¶ 43 First, the accuser never reported to the police or any other authorities her allegation that she was raped by an acquaintance at a New Year's Eve party. Confiding in one's friends that one has been the victim of a sexual assault is a substantially different level of accusation than filing a formal complaint with the police department and participating in a criminal investigation. The seriousness of the allegation against Tarrats far exceeds the seriousness of her allegation against the acquaintance and renders an analogy between the two allegations extremely weak.

¶ 44 Second, the accuser had been drinking heavily on the night of the New Year's encounter, and thus felt less than completely sure about what had happened. On the night of her encounter with Tarrats, however, no alcohol was involved and both she and the defendant agree that she verbalized her resistance to his sexual advances.

¶ 45 Finally, while Tarrats may argue that the accuser had a motive to falsely tell her friends that she had been raped at the New Year's party in order to preserve her relationship with her then-boyfriend, he cannot and does not argue that she has such motive to fabricate a false claim against him.

¶ 46 Rather than providing real probative value, any evidence tending to prove that the accuser had invented the previous rape claim would instead prejudice the truth-finding mission of the jury by making unpermitted references to the accuser's sexual behavior or character. It would be inviting the jury to draw the inference that if the accuser made a false allegation in the past, her allegation in

this case would likewise be false. Such an inference is clearly improper under our rules of evidence. *See* Utah R. Evid. 404(b). The attenuated factual circumstances surrounding the two allegations only deepens the problem with using the first allegation to make inferences about the second. Further, such evidence would confuse the issues and unnecessarily create a trial within a trial, which the rules of evidence specifically seek to avoid. *See* Utah R. Evid. 403.

¶ 47 We conclude that the trial court acted within its discretion in determining that it would be a violation of rule 403 to admit evidence of the prior allegation. Its probative value is low, since the evidence that she recanted is weak and the facts of the two incidents are so attenuated, and its prejudicial effect is substantial, since the allegation is likely to be confusing to the jury and may lead them to draw improper inferences about the accuser's sexual conduct or character that would unfairly impact their assessment of the issues.

## CONCLUSION

¶ 48 The trial court exercised reasonable discretion in ruling that any evidence of the prior allegedly false rape accusation is inadmissible under Utah Rules of Evidence 412 and 403. First, the trial court did not abuse its discretion in requiring the defendant to prove by a preponderance of the evidence that the accuser made a prior false allegation, nor did it abuse its discretion in finding that the defendant failed to satisfy that threshold standard of rule 412. Further, the trial court reasonably concluded that rule 403 excludes the evidence because its probative value was outweighed by its prejudicial effect. The trial court's evidentiary ruling is affirmed, and we remand for further proceedings consistent with this opinion.

¶ 49 Chief Justice Durham, Justice Durrant, Justice Parrish, and Justice Nehring concur in Associate Chief Justice Wilkins' opinion.