2015 UT App 169

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CAROLINE ASHBY,
Defendant and Appellant.

Opinion
No. 20121070-CA
Filed July 9, 2015

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 101403829

Aaron P. Dodd, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
STEPHEN L. ROTH and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1     Caroline Ashby appeals from convictions on two counts of aggravated sexual abuse of a child, a first degree felony. Ashby argues the trial court erred in excluding evidence that the victim (Child) engaged in certain sexual behavior and by permitting the jury to take Child's video-recorded interview with them into the jury room for deliberations.[1] We affirm.

---

1. This court ordered that all briefs in this matter be classified as private. *See* Utah R. Evid. 412(c)(3). The State also moved to seal the transcripts and pleadings related to the rule 412 evidence. *Id.*

(continued...)

BACKGROUND

¶2     Child was born in 2002.[2] Between 2009 and 2010, Ashby cared for Child and sometimes watched him overnight. During this time, Child told his father (Father) that when Ashby cared for him, she took baths with him. Concerned that the seven-year-old boy was too old to be bathing with an adult woman, Father told Ashby it was inappropriate for her to bathe with Child. During this period, Child also began seeing a clinical psychologist (First Therapist) for therapy and counseling.

¶3     Around May 2010, Father learned that Ashby and her boyfriend (Boyfriend) "picked at" Child's scrotum in an attempt to remove stitches from a surgical procedure that Child underwent four years earlier. This information prompted Father to consult a surgeon, who told Father the stitches would have dissolved within weeks after surgery. When Father informed Ashby there could not be any stitches in Child's scrotum, Ashby claimed she did nothing inappropriate and was simply caring for Child after he complained of pain and asked her to look at his scrotum and legs.

¶4     In November 2010, when Child was eight years old, his stepmother (Stepmother) called Wasatch Mental Health for a

_____

(…continued)
("Unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed."). We hereby grant the State's motion to seal the transcripts and pleadings related to the rule 412 evidence. Accordingly, although Ashby's challenges detail the sealed facts and circumstances, we recite them generally in this opinion.

2. "[W]e recite the facts in a light most favorable to the jury's verdict, but present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *State v. Vigil*, 922 P.2d 15, 18 (Utah Ct. App. 1996) (citation and internal quotation marks omitted).

referral to a new therapist (Second Therapist) to address Child's "behavioral issues." During her call, Stepmother relayed some of her concerns regarding Ashby's interactions with Child, which led to an investigation.

¶5 Shortly thereafter, a forensic interviewer questioned Child at the Children's Justice Center (the CJC interview). The CJC interview was recorded onto a DVD (the DVD) and later transcribed. During the interview, Child said Ashby taught him about private parts when he was six or eight years old. When asked specifically what Ashby taught him, Child said he "[didn't] really want to tell" because "[i]t feels really embarrassing." Child confirmed that Ashby touched his scrotum to look for stitches and took naked baths with him. He also indicated that during these baths Ashby put soap on her hand and used it to "scrub" and "sweep" his private parts. Child explained that "[e]very single time," Ashby told him to "wash [her] everywhere" and "wash a little inside" her. Child said he used his hands to wash inside Ashby's vagina and "[i]nside her bum." He also washed her breasts.

¶6 In December 2010, Ashby was charged with two counts of aggravated sexual abuse of a child. Before trial, she filed a motion pursuant to rule 412 of the Utah Rules of Evidence, seeking to admit evidence that Child engaged in sexual behavior with other children. In the motion, Ashby asserted the evidence was admissible to impeach Child's credibility and to rebut the "sexual innocence inference." The State opposed the motion. After taking evidence and hearing arguments, the court made several findings of fact.

¶7 The court found that before the allegations came forth in this matter, Child was involved in six incidents of sexual behavior with other children (the rule 412 evidence). Five of the six involved other boys; in the sixth, Child asked a girl to touch his genitals.

¶8 The trial court further found that during the period the alleged abuse was taking place, First Therapist was treating

Child for "'some behavioral acting out and some lying.'" Although Child disclosed to First Therapist that he was uncomfortable with Ashby bathing with him and checking his scrotum for stitches, Child never disclosed that she abused him. Nonetheless, he disclosed to Second Therapist that he had been abused by Ashby "over 100 times." He also denied his sexual behavior with other children. Second Therapist indicated Child was "in denial about his behavior with other children during one therapy session." Moreover, the trial court found that during the CJC interview, Child failed to disclose sexual behavior with other children and instead disclosed only sexual behavior with Ashby.

¶9    The trial court ultimately denied Ashby's rule 412 motion and prohibited her from offering evidence of Child's sexual behaviors, except those involving Child and Ashby. In so ruling, the court considered the relevance of the evidence to Ashby's theories for admission and the extent to which its exclusion furthered the purposes of rule 412. The trial court determined that even if an exception to rule 412 allowed admission of the evidence, the court would nevertheless exclude it based on rule 403 of the Utah Rules of Evidence. Taken together, the rule 412 evidence "[did] not explain [Child's] ability to describe the breast stimulation or digital vaginal and anal penetration alleged in this matter." Furthermore, the court reasoned that Ashby would have many opportunities to impeach Child's testimony without referencing his other sexual behaviors. Accordingly, the trial court excluded the rule 412 evidence under both rules 412 and 403.

¶10   A jury trial was held in October 2012. Before the jurors heard the evidence, the trial court informed them that they "will have everything that's been admitted with [them] in the jury room" and that "[g]enerally, what's played in front of [the jurors] or read to [the jurors] comes into evidence and [they will] have an opportunity to see it later." The trial court also told the jurors that when it gives them "the go-ahead at the end of everything to talk about the case, you'll have the exhibits, you'll be able to share them, look at them, comment on them to each

other, those—anything that's been admitted into evidence will go into the room with you." The court further stated, "Anything that's not admitted, if, for instance, there was some video or audio recording that was played but not admitted into evidence, then you'd just have to rely on your memory or whatever notes you take for your personal use."

¶11 At trial, Child testified via a live video feed playing on a closed-circuit television. In his testimony, Child restated that he had repeatedly taken naked baths with Ashby and they washed each other's private parts. He was also able to describe in detail what breasts and a vagina look like. Unlike the CJC interview, however, Child stated at trial that he did not remember washing the inside of Ashby's vagina and anus, but he indicated that he "probably did."

¶12 Ashby testified and denied the allegations of abuse. Although Ashby admitted she and Boyfriend looked at Child's scrotum for stitches and she bathed nude with Child when he was younger, she testified she stopped bathing naked with him when he "started to identify body parts." According to Ashby, she bathed with Child while they were wearing bathing suits one time between January 2009 and December 2010. She testified that because Child was "old enough . . . to wash himself," she did not wash him during this period. Ashby denied she had Child wash her body.

¶13 In connection with the forensic interviewer's testimony, the State sought to show the jury the DVD recording of the CJC interview pursuant to rule 15.5 of the Utah Rules of Criminal Procedure and rule 801 of the Utah Rules of Evidence.[3] Defense counsel objected, arguing the State failed to show good cause to

---

3. Rule 15.5 allows a court to admit an alleged child victim's oral statement regarding a sexual-offense charge under certain conditions. Utah R. Crim. P. 15.5. Rule 801 provides that a prior inconsistent statement is not hearsay if the declarant testifies and is subject to cross-examination. Utah R. Evid. 801(d)(1)(A).

play the DVD. After hearing argument and viewing the DVD in camera, the trial court ruled that the requirements of rule 15.5 and rule 801 were met. As a result, it allowed the DVD of the CJC interview to be played in open court. Before showing the DVD, the State offered it as an exhibit and the court received it.

¶14 At the beginning of the last day of trial, the court discussed with counsel whether to allow the jury to watch the DVD of the CJC interview while deliberating. The State argued that under rule 17(*l*) of the Utah Rules of Criminal Procedure, the jury was allowed to take with it into deliberations anything received into evidence, including the DVD. Defense counsel objected, arguing that this would invite the jury to give greater weight to the CJC interview over Child's in-court testimony. The trial court judge agreed with the prosecutor, stating, "I don't see any reason it wouldn't go back with them, which means we aren't—usually what I do, I don't automatically send a TV back with them to play it. We wait until they ask for it and . . . then we send in a TV with them."

¶15 At the close of evidence, the trial court told the jury that "[t]he evidence will go back with you and . . . we'll go through and make sure exactly what's been admitted, what hasn't been admitted so that only the received evidence goes back with you and you don't inadvertently get something you shouldn't have had." The DVD of the CJC interview was allowed into the jury room. Although the record suggests that four CDs containing recordings of phone calls between Ashby and Child went into the jury room along with a portable CD player, there is no evidence a DVD player was sent in to the jury room during the jury's deliberations.

¶16 The jury convicted Ashby on both counts, and the trial court sentenced her to concurrent prison terms of ten years to life on each. Ashby appeals.

## ISSUES AND STANDARDS OF REVIEW

¶17    Ashby first argues the trial court abused its discretion and denied her constitutional rights to confrontation and a fair trial when it excluded impeachment evidence of Child's sexual conduct with others pursuant to rule 412 of the Utah Rules of Evidence. *See* Utah R. Evid. 412. "When reviewing a trial court's decision to limit cross-examination, we review the legal rule applied for correctness and the application of the rule to the facts of the case for an abuse of discretion." *State v. Marks*, 2011 UT App 262, ¶ 11, 262 P.3d 13 (citation and internal quotation marks omitted).

¶18    Second, Ashby argues the trial court erred by allowing the jury to take the DVD of the CJC interview into its deliberations. The court's decision to send in the DVD was based on its interpretation and application of rule 17(*l*) of the Utah Rules of Criminal Procedure, which addresses the kinds of exhibits a jury may take into deliberations. *See* Utah R. Crim. P. 17(*l*). Generally, we review a trial court's interpretation and application of a rule of procedure for correctness. *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 12, 307 P.3d 576. But, "[i]n order to justify reversal[,] the appellant must show error that was substantial and prejudicial in the sense there is at least a reasonable likelihood that in the absence of the error the result would have been different." *Id.* (alterations in original) (citation and internal quotation marks omitted).

## ANALYSIS

### I. Rule 412 Evidence

¶19    Ashby challenges the trial court's decision to exclude evidence of Child's sexual behaviors involving other children. The court excluded the evidence based on rules 412 and 403 of the Utah Rules of Evidence. We examine the trial court's application of both rules to the challenged evidence.

A.     Rule 412

¶20    "[I]n a criminal proceeding involving alleged sexual misconduct," "evidence offered to prove that a victim engaged in other sexual behavior" is subject to rule 412. Utah R. Evid. 412(a)(1). The parties do not dispute that the evidence of Child's prior sexual behavior falls under rule 412's scope. *See id.*

¶21    Although rule 412 generally prohibits the admission of evidence of a victim's other sexual conduct, Ashby asserts the evidence of Child's sexual behavior should have been admitted under an exception that allows the court to admit it when its "exclusion would violate [her] constitutional rights." *See id.* R. 412(b)(3). Ashby argues her constitutional right to confrontation and to present a complete defense required admission of this evidence for three critical purposes: (i) to rebut the jury's likely assumption that Child was too young to fabricate the allegations against her; (ii) to impeach Child's testimony and challenge his credibility; and (iii) to show that he had earlier opportunities to disclose abuse but did not do so.

¶22    In reviewing the court's decision to exclude the evidence under rule 412, we assess (1) the relevance of the challenged evidence to an issue critical to the defense and (2) the extent to which its exclusion furthers the purposes of rule 412. *See State v. Marks*, 2011 UT App 262, ¶ 23, 262 P.3d 13.

1.     Relevance

¶23    With one exception, the court found that each proposed piece of evidence bore "only marginal relevance" to Ashby's theory for admission. Ashby challenges this conclusion.

¶24    Evidence is relevant if it has any tendency to make a fact of consequence "more or less probable than it would be without the evidence." Utah R. Evid. 401. "Relevant evidence is presumptively admissible; irrelevant evidence is not." *State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526. In other words, relevance is defined in binary terms: "Either evidence is relevant

because it makes a fact of consequence more or less probable, or it is not because it does not." *Id*. ¶ 27. Our rules of evidence "establish a 'very low' bar that deems 'even evidence with the slightest probative value' relevant and presumptively admissible." *Id*. ¶ 24 (quoting *State v. Martin*, 2002 UT 34, ¶ 34, 44 P.3d 805).[4]

¶25    Considering that the threshold for determining whether evidence is relevant is "very low," we agree with Ashby that because the evidence of Child's other sexual behaviors had at least some probative value to all three of Ashby's purposes, it was relevant. It was slightly probative of Child's ability to fabricate a description of the abuse and therefore relevant to rebut the potential for the jury to assume that he could not have described the abuse as he did unless Ashby actually abused him. Likewise, Child's failure to disclose his sexual behavior with other children during the CJC interview and his lack of candor with Second Therapist about these incidents were probative of his honesty, and therefore relevant to impeach his testimony. Finally, Child's disclosure to First Therapist of some of his other sexual behaviors was at least slightly probative of his capacity and opportunity to disclose that Ashby had abused him, and therefore relevant to her defense that if she had in fact abused him, Child would have disclosed it earlier.

### 2.    Purposes of Rule 412

¶26    The trial court determined that rule 412's purposes were furthered by excluding evidence concerning Child's sexual

---

4. Because *State v. Richardson*, 2013 UT 50, 308 P.3d 526, was decided after the trial in this case, the trial court did not have the benefit of its analysis, and instead relied on *State v. Marks*, 2011 UT App 262, 262 P.3d 13, in which this court employed terms suggesting that there are varying degrees of relevance. Post-*Richardson*, we recognize that evidence either is relevant or it is not, and we therefore do not use the *Marks* terminology in our analysis of this case.

behavior with other children, reasoning that although some of this evidence was relevant, its admission "would render great embarrassment" to Child. The court also explained, "[He] is likely to be frightened and confused by the prior experiences and likewise afraid of having to discuss them, or having them discussed about him, in a public and open forum." It added, "This is true particularly in light of the evidence that [he] was the instigator of . . . the other sexual behaviors [Ashby] now seeks to include." Ashby argues that excluding evidence of Child's other sexual behavior was disproportionate to the purposes of rule 412. She also contends the protections of rule 412 are unnecessary, inasmuch as she could introduce the evidence briefly without cross-examining Child and without further embarrassing or humiliating him. We agree with the trial court's assessment.

¶27    Our supreme court has instructed that "rule 412 should be construed broadly in order to fully effectuate the policy considerations underlying its prohibitions." *Martin*, 2002 UT 34, ¶ 42. The rule has several goals, including "protecting victims of sexual assault from humiliation, encouraging victims to report sexual crimes, and preventing the introduction of 'irrelevant and collateral issues that may confuse or distract the jury.'" *State v. Marks*, 2011 UT App 262, ¶ 48, 262 P.3d 13 (quoting *State v. Tarrats*, 2005 UT 50, ¶ 24, 122 P.3d 581). When a young victim is involved, we have recognized that a "child is likely to be confused and frightened about the past experience, the child may have inadequate vocabulary to discuss it, and the stress of confronting those memories may increase the likelihood that the child will be unable to testify competently about the current allegations." *Id*. ¶ 50. Consequently, "rule 412's goal of protecting victims of sexual crimes from embarrassment and humiliation, and of encouraging them to report the crimes, are strongly implicated when the complainant is a child." *Id*.

¶28    The risk that Child would suffer embarrassment and humiliation is great notwithstanding Ashby's assertion that she could offer the evidence without cross-examining him. Even if Ashby used other witnesses to adduce the evidence of Child's

sexual behavior with other children, rule 412 was designed to protect against the public disclosure of this type of evidence—regardless of whether the proponent seeks to introduce the evidence during examination of the victim or other witnesses.[5] *See id.* ¶ 51. Accordingly, we are not persuaded that the exclusion of the challenged evidence here was disproportionate to the purposes of rule 412. Instead, we agree with the court's conclusion that excluding this evidence was consistent with the rule's purposes.

¶29    We turn now to the trial court's alternative basis for excluding the challenged evidence, rule 403 of the Utah Rules of Evidence.

B.    Rule 403

¶30    Ashby also challenges the trial court's exclusion of Child's other sexual behaviors under rule 403. Ashby asserts that "any danger of unfair prejudice is dwarfed by the probative value of this evidence" to all three of her purposes.

¶31    Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403. "We allow trial courts considerable

---

5. The advisory committee note states that rule 412 "bars the admission of such evidence, whether offered as substantive evidence or for impeachment, except in designated circumstances[, i.e., the rule's exceptions]." Utah R. Evid. 412 advisory committee note. It might be more difficult for a child witness to testify directly about his sexual behavior, but even if this were not the case, the public disclosure of such behavior would still likely cause embarrassment and humiliation and tend to discourage future reporting of sexual crimes by the child himself and by other victims concerned about potential disclosure of such matters in the course of prosecution.

freedom in applying [rule 403] to the facts . . . ." *State v. Boyd*, 2001 UT 30, ¶ 40, 25 P.3d 985 (alteration in original) (citation and internal quotation marks omitted). Further, "[w]e will not overturn the trial court's ruling [on the application of Rule 403] unless the abuse of discretion is so severe that it results in a likelihood of injustice." *Tarrats*, 2005 UT 50, ¶ 39 (alterations in original) (citation and internal quotation marks omitted).

¶32 In the context of deciding whether evidence that falls within an exception to rule 412 is otherwise admissible, a court will admit the evidence under rule 403 only if it determines "that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury." *State v. Bravo*, 2015 UT App 17, ¶ 26, 343 P.3d 306 (citing *Boyd*, 2001 UT 30, ¶ 41); *see also id.* ¶ 19 ("[T]o be admissible, the probative value of any particular piece of rule 412 evidence must still outweigh the dangers of prejudice inherent in its admission.").

### 1. The Sexual Innocence Inference

¶33 The trial court determined that even if an exception to rule 412 would allow admission of the evidence, the court would nevertheless exclude it based on rule 403 of the Utah Rules of Evidence. The court explained that on one hand, Child's young age—ten years old at the time of trial—would support the likelihood of the jury drawing a sexual innocence inference. On the other hand, the court determined the evidence had limited probative value, because the "nature of the 412 evidence is quite dissimilar to the nature of the allegations in this matter." Ashby contends the evidence of Child's other sexual behaviors was necessary to rebut the jury's likely assumption that he was too young to fabricate a description of the abuse unless Ashby actually abused him. Ashby asserts that the similarity between her alleged behavior with Child and his sexual behaviors with other children supports an inference that he fabricated the allegations against her.

¶34    In considering the probative value of the evidence of a child victim's other sexual behavior for purposes of rebutting the sexual innocence inference, trial courts first consider "the age of the child complainant at the time the child describes the sexual assault."[6] *State v. Marks*, 2011 UT App 262, ¶ 37, 262 P.3d 13. Here, Child was eight years old when he first disclosed Ashby's abuse and ten years old at trial. The prosecutor raised the sexual innocence inference in closing argument, asserting that given his age, Child could not fabricate the allegations against Ashby because he would not know and be able to describe the details of female anatomy and sexual arousal. We agree with the trial court that Child's young age would support the likelihood that the jury might draw the sexual innocence inference in this case.

¶35    Next, courts evaluate the probative value of a child victim's sexual behavior with respect to his ability to fabricate the current allegations by analyzing "whether the prior sexual activity is similar to that involved in the allegations against the defendant." *Id*. ¶ 39. In considering the similarity between a child complainant's other sexual activity and the alleged abuse, courts "focus[] on the utility of the evidence in rebutting the sexual innocence inference." *Id*. ¶ 40. The probative weight depends on the degree of similarity between those acts and the alleged abuse. *See id*. ¶¶ 40–41; *see also Bravo*, 2015 UT App 17, ¶ 29 ("[T]he probative value of prior sexual history may be greater when the prior acts are similar to the charged conduct." (citing *State v. Richardson*, 2013 UT 50, 308 P.3d 526)).

¶36    The trial court determined that Child's sexual behavior with other children was not similar to the allegations against

---

6. The "sexual innocence inference" refers to "the jury's likely assumption that a child would not have . . . sexual knowledge but for the charged abuse." *Marks*, 2011 UT App 262, ¶ 33. "Utah, like most other jurisdictions, recognizes the relevance of the complainant's past sexual conduct to rebut the sexual innocence inference in appropriate cases." *Id.* ¶ 36.

Ashby. As the court explained, all but one instance of Child's sexual behavior with other children involved oral stimulation with other males. Taken together, the rule 412 evidence "[did] not explain [Child's] ability to describe the breast stimulation or digital vaginal and anal penetration alleged in this matter." Ashby challenges this conclusion and argues the evidence shows Child had a sophisticated knowledge of sexual activity. Specifically, Ashby argues, Child's sexual behavior with other children was similar to the allegations against her.

¶37   We agree that the nature of some of Child's sexual behavior with other children was sufficiently similar to the specific sexual acts Ashby was alleged to have committed against him to cross the low threshold of relevance. But we also agree with the trial court that the dissimilarities considerably weaken the probative value of Child's other behavior with respect to his ability to fabricate the allegations concerning Ashby.[7] *See Marks*, 2011 UT App 262, ¶¶ 41, 43 (indicating that a child victim's simulation of sexual intercourse was not probative of his ability to fabricate allegations that the defendant orally sodomized him). Child's sexual behavior with other children involved having others touch his private parts, as well as Child's oral contact with the sexual parts of others. The acts committed here are only similar to the extent they included manual touching of Child's and Ashby's sexual body parts. A significant difference, however, is that Ashby's acts did not include oral stimulation. As a result, we conclude the trial court did not abuse its discretion in excluding this evidence on the ground that its probative value in rebutting the sexual innocence

---

7. Ashby also claims the dissimilarity "shows that someone else was teaching [Child] this behavior." But this court explained in *Marks* that dissimilar sexual activity is not probative of "a child's ability to fabricate allegations of sexual abuse against a defendant." *See id.* ¶¶ 39–43. In light of this case law, Ashby has failed to convince us that dissimilar sexual activity is probative to rebutting the sexual innocence inference.

inference did not outweigh the potential for unfair prejudice to Child of the kind addressed by rule 412.

### 2.    The Challenge to Child's Credibility

¶38    Next, Ashby claims the evidence of Child's sexual behavior with other children should have been admitted for impeachment purposes. Specifically, she proposed to introduce evidence that during the CJC interview Child failed to disclose his sexual behavior with other children and he was dishonest with Second Therapist about the incidents. Ashby asserts that the exclusion of this evidence "left the jury with the false assumption that [Child] was not only telling the truth, but had no history of being untruthful."

¶39    With respect to any omission about Child's sexual conduct with other children during the CJC interview, the trial court reasoned that Child was never asked questions that would elicit such a disclosure. If he was not asked about such behaviors, the fact that he did not disclose them "does not support [Ashby's] theory for [admission] that [Child] is dishonest about such sexual behaviors." Although this evidence was relevant, we agree its probative value is relatively low because Child was not asked specific questions that would draw out disclosure of his other sexual behavior.

¶40    With respect to Child's dishonesty in his therapy sessions with Second Therapist about his behavior with other children, the trial court found that "only a single progress note" was relevant to Child's truthfulness. The court explained that Second Therapist's note "reflect[ed] a connection between [Child's] sexual conduct and his dishonesty about the conduct." The court nevertheless excluded the evidence under rule 403, finding "it would be more prejudicial to the State and [Child, than] it would have probative value for [Ashby]." We cannot say this is an abuse of discretion, and in any event, as the trial court observed, "There are many ways to impeach the victim's [honesty] without a resort to his other sexual behaviors." For instance, the court's ruling permitted Ashby to question Child about his failure to

report the charged abuse to First Therapist and about the differences in the amount of such abuse reported to Second Therapist compared to the amount of abuse reported during the CJC interview. The ruling also allowed Ashby to question other witnesses about Child's general reputation for dishonesty. Given these alternative methods of addressing the issue, the probative value of the rule 412 evidence was quite low compared to its potential for unfair prejudice. We therefore do not agree with Ashby that the rule 412 evidence should have been admitted for impeachment purposes and we conclude that the trial court did not abuse its discretion.

### 3.     Child's Failure to Disclose Ashby's Abuse Earlier

¶41    In a related argument, Ashby contends the trial court erroneously excluded evidence that Child reported some of his sexual behavior with other children to First Therapist. According to Ashby, these disclosures "show that [Child] was capable of and had multiple opportunities to report to [First Therapist] inappropriate sexual contact by Ashby, if such abuse actually occurred."

¶42    Although this evidence is relevant to demonstrate Child had earlier opportunities to disclose Ashby's abuse, Ashby had other means of effectively showing Child delayed reporting. *See State v. Quinonez-Gaiton*, 2002 UT App 273, ¶¶ 17–18, 54 P.3d 139. In fact, the jury heard evidence that Child did not disclose the abuse to First Therapist even though First Therapist was treating him during that period. Moreover, the jury heard that Child reported some of Ashby's disturbing conduct to First Therapist, including that she took baths with him and had picked at his scrotum. The jury also learned that Child told First Therapist these incidents made him uncomfortable. Ashby's counsel highlighted these facts during closing statements to argue that Child's memory had been influenced by external sources and that Child would have disclosed the charged abuse sooner if it in fact occurred.

¶43   In sum, Ashby has not demonstrated that the trial court exceeded its discretion in ruling that the evidence of Child's other sexual behavior was inadmissible under rule 403. Although we have determined the evidence was relevant, we agree its admission might have confused the issues and focused the trial on tangential matters. We also agree with the trial court's determination that admitting the rule 412 evidence might lead the parties to focus on developing facts surrounding tangential incidents with other children, and "'only embarrassing and intrusive questioning'" of Child could reveal what actually triggered his conduct.[8] (Quoting *State v. Marks*, 2011 UT App 262, ¶ 52, 262 P.3d 13.) The court ruled the probative value therefore did not outweigh the danger of unfair prejudice, and we conclude that this determination was within the scope of the court's discretion.

C.     Conclusion

¶44   In summary, we conclude that the rule 412 evidence of Child's sexual behavior with other children was relevant to his ability to fabricate the abuse allegations against Ashby, and relevant to his truthfulness and his delay in reporting the abuse. We nevertheless affirm the trial court's ruling that the exclusion of the rule 412 evidence furthered the purposes of rule 412. In addition, because the probative weight of the evidence was slight in contrast to its substantial prejudice, the trial court's determination to exclude it pursuant to rule 403 was not an

---

8. The trial court quoted this language from *State v. Marks*, 2011 UT App 262, 262 P.3d 13, presumably to point out that it would take embarrassing questions to explain *why* Child engaged in these behaviors with other children. The court also quoted additional language from *Marks* stating, "'Because the jury might engage in speculation about what prompted the incident [of sexual behavior with other children], admission of the evidence could result in confusion of the issues to be decided . . . .'" (Alteration in original.) (Quoting *id.* ¶ 52.)

abuse of discretion. Because Ashby has not shown that evidence of Child's other sexual conduct was admissible to vindicate her constitutional rights, we also affirm the trial court's exclusion of the evidence under rule 403.

## II. The DVD Taken into the Deliberating Room

¶45    Next, Ashby argues the trial court erred in sending the DVD of the CJC interview to the jury room during deliberations. Ashby claims the court's decision allowed the jury to "put too much emphasis . . . on the CJC interview, thereby bolstering [Child's] testimony and improperly diminishing Ashby's testimony." The State counters that the DVD of the CJC interview was an exhibit received into evidence that rule 17(*l*) of the Utah Rules of Criminal Procedure permits the court to provide the jury during deliberations.

¶46    Because Ashby has not convinced us she was harmed by the trial court's decision, we do not address whether sending the DVD of the CJC interview into jury deliberations was erroneous. Rule 17(*l*) allows the jury to take jury instructions and "all exhibits which have been received as evidence" into deliberations with them. Utah R. Crim. P. 17(*l*). The rule permits the court to withhold certain exhibits from deliberations unless the jury requests it. *Id.*

¶47    Ashby asks us to assume the jury watched the CJC interview during its deliberations, but we will not do so under the circumstances of this case, because nothing suggests the jury watched it. Accordingly, any error in allowing the CJC interview to be included with the exhibits for the jury to view during deliberations would be harmless. When the case was submitted to the jury, the court specifically discussed sending a CD player with the jurors so they could listen to the recorded phone calls that had been admitted as exhibits. The record does not disclose, however, that the court made similar arrangements so the jury could play the DVD of the CJC interview. In fact, when announcing its ruling to allow the jurors to take the DVD into the jury room, the court stated that it usually does not

"automatically send a TV back with [the jurors] to play [the recording]." It further explained, "We wait until they ask for it and . . . then we send in a TV with them." There is no indication in the record that the court deviated from this practice, nor is there any indication the jury requested or received a DVD player while it deliberated. In light of these facts, we cannot infer or assume that the jury requested, or that the court allowed, access to equipment that would enable it to watch the DVD during deliberations. Because the record does not suggest that the jury actually played the DVD of the CJC interview during its deliberations, even if the trial court erred by permitting the jury to take the DVD into deliberations, Ashby has not demonstrated the error was harmful.

## CONCLUSION

¶48 Although we have determined that the rule 412 evidence of Child's sexual behavior with other children was relevant, the trial court acted within its discretion in excluding the evidence to further the purposes of rule 412. Furthermore, the court acted within its discretion in excluding the evidence pursuant to rule 403. Even if an exception of rule 412 applied, the evidence was inadmissible under rule 403 because its probative value did not outweigh the danger of unfair prejudice. Finally, because there is no evidence the jury actually watched, or was capable of watching, the DVD of the CJC interview as it deliberated, any error in allowing it into the deliberating room was harmless. Accordingly, we affirm.

_____