**2015 UT App 17**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
PETER LUNA BRAVO III,
Defendant and Appellant.

Opinion
No. 20120305-CA
Filed January 23, 2015

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 111900792

Peter A. Daines and Joanna E. Landau, Attorneys
for Appellant

Sean D. Reyes, Deborah L. Bulkeley, and
Ryan D. Tenney, Attorneys for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

PEARCE, Judge:

¶1     Peter Luna Bravo III appeals from his conviction of aggravated burglary, rape, and forcible sodomy. Bravo argues that the district court erred when it excluded evidence of his sexual history with the victim (Victim) under rule 412 of the Utah Rules of Evidence. We conclude that, in large measure, Bravo failed to proffer specific instances of Victim's sexual behavior as the rule requires. Because Bravo failed to provide the district court with the information it needed to perform a meaningful analysis under rule 403 of the Utah Rules of Evidence, the court did not exceed the bounds of its discretion in excluding the evidence. We affirm.

BACKGROUND[1]

¶2     Bravo met Victim in 2001. The two became romantically involved and eventually married. They divorced in 2008 but continued their sexual relationship. In August 2010, the couple fought, the police were called, and Victim told Bravo to leave and never return.

¶3     Despite Victim's command to stay away, a few weeks later Bravo visited her apartment and knocked on the door. Believing he was a neighbor looking to borrow a cigarette, Victim cracked the door open. Bravo pushed his way in and pinned her to the ground. He grabbed a dog leash and held her down by pressing the leash across her neck. He forcibly penetrated her vaginally. He then slung her over his shoulder, carried her to her bedroom, and threw her on the bed. Victim struggled to escape, but Bravo restrained her, flipped her onto her stomach, and penetrated her anally. He became frustrated when he was unable to ejaculate and left, punching and breaking a window on the way out.

¶4     The State charged Bravo with aggravated burglary, rape, and forcible sodomy. Before trial, Bravo moved to admit evidence of Victim's prior sexual activity pursuant to rule 412 of the Utah Rules of Evidence. In his written motion, Bravo proffered that during their marriage, he and Victim "consensually engaged in what would generally be considered 'rough sex,' including but not limited to autoerotic asphyxiation, sodomy, and numerous other sex acts well outside this community's standards for sexual behavior." He further proffered that even after their divorce, the couple "not infrequently continued to get together for sexual escapades . . . consistent with their sexual activities during their

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Marchet*, 2014 UT App 147, ¶ 2 n.3, 330 P.3d 138 (citation and internal quotation marks omitted).

marriage." Bravo's motion asserted that this evidence should be admitted because it "supports the defense of consent" and because its exclusion would "violate [his] fundamental due process rights under the Utah and U.S. Constitutions." The district court scheduled an in camera hearing to address the rule 412 motion.

¶5     Bravo was unable to attend the scheduled hearing, which proceeded in his absence. The State argued that Bravo's proposed testimony was too general to meet rule 412's requirements or to allow the State to prepare properly for trial. Bravo's counsel argued that no decision on the matter should be reached until Bravo was present. The district court agreed to delay ruling until Bravo could attend but indicated that it was inclined to allow testimony that Bravo and Victim's sexual activity continued after their marriage ended. The district court expressed skepticism that Bravo's proposed "rough sex" testimony would be admissible, explaining,

> [I]f it's just the before and after marriage we did certain "rough" things including asphyxiation and, and sodomy it just doesn't seem relevant when the charge is that Mr. Bravo on this particular occasion forced his way into the complaining witness's home, grabbed her by the neck and forced her to the floor, disrobed her against her will, forced himself upon her, put a dog leash around her neck, drug her into the bedroom and then, and then penetrated [her] anally. I just don't see how, how the fact that they may have [had] some form of unconventional sex before reflects that the victim consented to this behavior on this occasion.

The district court reserved the question until trial so that Bravo could be present.

¶6     On the first day of trial, the district court revisited the rule 412 motion. The district court again stated its belief that testimony about prior rough sex would not be relevant to show consent, but the court invited Bravo's counsel to proffer specific prior acts and

explain why those acts would be relevant to demonstrate consent. Bravo's counsel responded that Bravo and Victim's "typical day-in-day-out sexual routines included bondage, masochism, anal sex and pretty much everything else one could think of without going into more detail on the record." Counsel argued that Victim's allegation of anal sex was consistent with the couple's long-term sexual history and that her testimony about the dog leash "would go to the autoerotic asphyxiation as well [as] possible bondage incidents." Counsel concluded, "[I]n a nutshell Mr. Bravo would testify that the events that happened on the night in question in this case were, if anything, tame for what had been the norm for their relationship . . . ."

¶7 The district court ruled that Bravo could testify that he and Victim continued to have sex after their divorce. However, the district court excluded Bravo's proffered testimony about the couple's prior sex practices, ruling, "I just don't see the relevance and even if there is a sliver of relevance in there . . . the relevance would be outweighed by the danger of unfair prejudice."

¶8 At trial, Bravo testified that the events Victim described had not occurred in the place or manner Victim portrayed. Bravo testified that he had not gone to Victim's home, but that Victim had come to his hotel room where they engaged in consensual and "strictly vaginal" sex. He also testified that he had not broken the window at Victim's apartment and that he had witnessed one of Victim's friends break it on a separate occasion.

¶9 The jury convicted Bravo of aggravated burglary, rape, and forcible sodomy. The district court sentenced him to three concurrent five-years-to-life prison terms. Bravo appeals.

ISSUE AND STANDARD OF REVIEW

¶10 Bravo argues that the district court committed reversible error when it excluded evidence of the sexual history he shared with Victim. We review the district court's evidentiary rulings for

an abuse of discretion. *See State v. Clark*, 2009 UT App 252, ¶ 10, 219 P.3d 631. We review the district court's interpretation of evidentiary rules for correctness, giving no deference to the district court's interpretation. *See State v. Richardson*, 2013 UT 50, ¶ 32, 308 P.3d 526.

ANALYSIS

¶11    Rule 412 of the Utah Rules of Evidence generally prohibits the admission of evidence of a victim's sexual behavior or sexual predisposition in any criminal proceeding involving alleged sexual misconduct. The rule contains several exceptions, one of which permits the admission of "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent," so long as that evidence "is otherwise admissible under [the Utah Rules of Evidence]." Utah R. Evid. 412(b)(2). Bravo argues that the evidence he proffered regarding his and Victim's prior sexual activities should have been admitted under rule 412(b)(2) and that the district court's exclusion of the evidence constitutes reversible error.[2]

I. *State v. Richardson* and Legal Standards
for Admission of Rule 412 Evidence

¶12    After Bravo filed his initial appellate brief, but before the State responded, the Utah Supreme Court decided *State v. Richardson*, 2013 UT 50, 308 P.3d 526.[3] In *Richardson*, the defendant was convicted on rape and sodomy charges arising in part from the

---

2. Bravo does not argue that excluding the evidence would "violate [his] constitutional rights" under rule 412(b)(3). *See* Utah R. Evid. 412(b)(3).

3. Both the State's brief and Bravo's reply brief contained extensive analysis applying *State v. Richardson*, 2013 UT 50, 308 P.3d 526, to this case.

allegation that he had forced a woman to have anal sex with him while she was menstruating. *See id.* ¶ 21. The supreme court reversed the convictions because the district court had excluded evidence that the defendant and the alleged victim routinely engaged in consensual anal sex while the victim was menstruating. *See id. Richardson* applied rules 401 and 402 of the Utah Rules of Evidence in the specific context of rule 412(b)(2)'s consent exception, and the case guides our analysis of Bravo's rule 412(b)(2) argument.

¶13 In *Richardson*, the defendant sought to admit the sexual history evidence to "'prove consent'" pursuant to rule 412(b)(2). 2003 UT 50, ¶ 21. In light of this purpose, the supreme court concluded that the proffered evidence fell "squarely within" the rule 412(b)(2) consent exception. Thus, "the only remaining question [was] whether [the] evidence was 'otherwise admissible' under the rules of evidence." *Id.*

¶14 The district court in *Richardson* had excluded the evidence because it was "'not sufficiently relevant to be admissible.'" *Id.* ¶ 22. However, the supreme court agreed with the defendant that "there is no 'heightened relevancy test for evidence of specific instances of sexual activity between an alleged victim and the accused'" and that the evidence "was relevant under the lenient standards of rules 401 and 402 [of the Utah Rules of Evidence]." *Id.*; *see also* Utah R. Evid. 401 (defining relevant evidence as evidence having any tendency to make a fact of consequence more or less probable than it would be without the evidence); Utah R. Evid. 402 (declaring relevant evidence presumptively admissible and irrelevant evidence inadmissible).

¶15 The supreme court stated that, together, rules 401 and 402 "establish a very low bar that deems even evidence with the slightest probative value relevant and presumptively admissible." *Richardson*, 2013 UT 50, ¶ 24 (citation and internal quotation marks omitted). The court further explained that those rules "define relevance in binary terms: Either evidence is relevant because it makes a fact of consequence more or less probable, or it is not

because it does not." *Id.* ¶ 27. "The binary standard of relevance in our rules leaves no room for an evaluation of whether evidence [is] 'sufficiently relevant.' Either it [is] relevant or it [isn't] . . . ." *Id.* ¶ 29.

¶16    Examining the sexual history evidence at issue in that case, the *Richardson* court concluded that the evidence was relevant to the issue of the victim's consent because it made consent "more probable" by "contextualiz[ing] the victim's sexual relationship with [the defendant]." *Id.* ¶ 25. Relying on the State's concession that "evidence that the two had a sexual relationship" was admissible, the supreme court explained, "The excluded evidence merely added detail to that knowledge. If the general evidence of a sexual relationship was relevant, the more detailed evidence was as well." *Id.*

¶17    Because the district court had excluded the sexual history evidence solely on relevance, *State v. Richardson* did not directly address the application of rule 403 to evidence of a victim's other sexual activity.[4] *See* 2013 UT 50, ¶¶ 30–32, 308 P.3d 526; *see also* Utah R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). However, the Utah Supreme Court has previously held that, under rule 403, evidence of "a rape victim's past sexual conduct" is presumptively inadmissible and may be admitted only when "its probative value outweighs the inherent danger of unfair prejudice to the [victim], confusion of issues, unwarranted invasion of the complainant's privacy, considerations of undue delay and time waste and the needless presentation of cumulative evidence." *State v. Boyd*, 2001 UT 30, ¶ 41, 25 P.3d 985 (alteration in original) (citation and internal quotation marks omitted); *see also Mayo v. Commonwealth*, 322 S.W.3d 41, 49 (Ky. 2010) (holding, with regards to a victim's prior sexual history, that

---

4.  *Richardson* did identify what it characterized as "the most obvious [rule] 403 argument—that the unconventional nature of the sexual conduct involved would lead to unfair prejudice." 2013 UT 50, ¶ 31.

"prejudice" can include "the potential to embarrass the victim"), *cited with approval in Richardson*, 2013 UT 50, ¶ 31.

¶18    Quoting *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989), Bravo argues that the presumption of inadmissibility applies only to "'certain categories' of evidence specifically identified as having 'an unusual propensity to unfairly prejudice, inflame, or mislead the jury.'" Bravo contends that "[e]vidence of specific instances of sexual conduct between the victim and the defendant [to show consent] is not one of those categories." Bravo cites a number of Utah cases that speak of the prejudice inherent in evidence of sexual activity with someone other than the accused. *See, e.g., State v. Martin*, 2002 UT 34, ¶ 40, 44 P.3d 805. These cases do not, however, state that evidence of sexual activity with the accused does not share those prejudicial qualities. Indeed, the rationales articulated for the exclusion of rule 412 evidence—safeguarding the victim from an invasion of privacy and the potential embarrassment that is associated with public discussion of intimate sexual behavior—continue to have force when the accused and victim share a sexual history.

¶19    The difference between evidence of sexual activity with the accused and evidence of acts with a third party turns on the greater potential for probative value that may be found in a shared sexual history. The exceptions to rule 412's ban on the admission of sexual history evidence represent specific situations where the probative value of the evidence *may* overcome the evidence's prejudicial tendencies. *See* Utah R. Evid. 412 advisory committee note ("The rule permits the evidence's admission in these designated circumstances because the probative value of the evidence significantly and ordinarily outweighs the possible harm to the victim or to the fact finding process."). Nevertheless, to be admissible, the probative value of any particular piece of rule 412 evidence must still outweigh the dangers of prejudice inherent in its admission. *See* Utah R. Evid. 403.

¶20    Because relevance is binary, rule 403 provides the mechanism to ensure that the privacy and dignity interests of

alleged victims are factored into the analysis. When offered to show consent, evidence of prior sexual acts between accuser and accused falls into a rule 412 exception. *See id.* R. 412(b)(2). *Richardson* suggests that "contextualizing detail" about an alleged victim's prior sexual activity with his or her alleged abuser can also be relevant to the issue of consent. *See* 2013 UT 50, ¶ 29. Rule 403 therefore represents a bulwark against "the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" falling within the exception enumerated in rule 412(b)(2). *See* Utah R. Evid. 412 advisory committee note.

¶21 Application of rule 403 to rule 412 evidence also protects the fact-finding process against the danger of "confusing the issues" or "misleading the jury." *See id.* R. 403. Although the inquiry is necessarily fact-dependent, there may well be instances where the prior sexual history between a defendant and a victim is such that the probative value of proffered rule 412 evidence does not overcome the propensity of such evidence to "'distort the jury's deliberative process,'" thereby confusing or misleading the jury. *See id.* R. 412 advisory committee note (quoting *Dibello*, 780 P.2d at 1229); *see also State v. Marks*, 2011 UT App 262, ¶ 52, 262 P.3d 13 ("Because the jury might engage in speculation about [prior sexual incidents], admission of the evidence could result in confusion of the issues to be decided, as well as 'the infusion of sexual innuendo into the fact finding process.'" (quoting *Boyd*, 2001 UT 30, ¶ 46)).

## II. The District Court's Rule 412 Analysis

¶22 The district court permitted Bravo to testify generally that he and Victim had previously engaged in sexual activity, even after their divorce. The district court explained, "Bravo should be able to present evidence to the fact that these parties continued to have sexual liaisons after the divorce . . . , otherwise the jury could speculate that once they're divorced they were separate from one another, they had no contact." Neither party suggests that the district court abused its discretion by admitting that testimony. Indeed, the district court's decision in this respect appears

consistent with the supreme court's reasoning in *State v. Richardson*. *See* 2013 UT 50, ¶ 26, 308 P.3d 526 ("[Rule 412(b)(2)] rests on the notion that a person is more likely to consent to sex with a past sexual partner.").

¶23    Bravo argues that the district court abused its discretion by not allowing him to offer additional testimony concerning his sexual history with Victim. The history Bravo wanted to provide can be separated into three categories: (1) testimony that the couple engaged in unspecified "numerous other sex acts well outside this community's standards for sexual behavior," as well as "pretty much everything else one could think of" such that "the events that happened on the night in question in this case were, if anything, tame for what had been the norm for their relationship"; (2) testimony concerning consensual "rough sex" including bondage, sadomasochism, and autoerotic asphyxiation; and (3) testimony that the couple had previously engaged in anal sex.

¶24    The district court denied Bravo's motion, stating, "I just don't see the relevance and even if there is a sliver of relevance in there, frankly, it would be my conclusion that the relevance would be outweighed by the danger of unfair prejudice." The district court's ruling thus rested on the court's evaluation of both relevance and the potential for unfair prejudice.

A.    Relevance of the rule 412 evidence

¶25    Under the binary standard of relevance *Richardson* articulated, the existence and nature of Bravo's prior sexual relationship with Victim are relevant to the issue of consent. *See* 2013 UT 50, ¶¶ 23–24; *State v. Jaeger*, 1999 UT 1, ¶ 13, 973 P.2d 404 ("[B]ecause the standard for determining whether evidence is relevant is so low, the issue of whether evidence is relevant is rarely an issue."). If nothing else, the proffered evidence "contextualizes" Victim's sexual relationship with Bravo. *See Richardson*, 2013 UT 50, ¶ 25 ("The excluded evidence merely added detail to that [general] knowledge. If the general evidence of a sexual relationship was relevant, the more detailed evidence

was as well."). The district court therefore erred in concluding that the additional rule 412 evidence Bravo sought to admit was not relevant to the contested issue of Victim's consent.[5]

B.     The rule 403 analysis

¶26     As explained above, relevance is not the only inquiry a district court must undertake before it admits evidence under rule 412(b)(2). The court must also ensure that the evidence is "otherwise admissible." Utah R. Evid. 412(b). This analysis necessarily includes a determination that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See State v. Boyd*, 2001 UT 30, ¶ 41, 25 P.3d 985.

¶27     Evidence offered to prove consent under rule 412(b)(2) must consist of "specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct." Utah R. Evid. 412(b)(2). A defendant seeking to admit such evidence must file a motion that "specifically describes the evidence" to be admitted. *Id.* R. 412(c)(1)(A). That description allows the district court to, among other things, assess the probative value of the evidence and balance that value against the considerations rule 403 enumerates.[6]

---

5. We note that the district court did not have the benefit of the Utah Supreme Court's rule 412 analysis in *Richardson* when it ruled on Bravo's motion.

6. We acknowledge that it is counterintuitive to protect alleged victims' privacy interests by requiring defendants to provide sufficient information to permit the court to weigh the probative value of the sexual history, but that is what the rule requires. The intrusion into a victim's privacy interests is somewhat ameliorated by the confidential nature of a rule 412 hearing, which mandates that allegations of prior sex acts be contained in sealed motions and heard only in closed court unless they are ultimately deemed

(continued...)

¶28    Bravo's motion and oral proffer failed, in most respects, to specifically describe the evidence he sought to introduce. The defects in Bravo's proffer vary with respect to each category of prior sexual acts he wanted to put before the jury. The most glaring defects were found in the portions of his proffer that were broad characterizations of his sexual history with Victim. Bravo asserted that their past sexual activities: (1) consisted of "pretty much everything . . . one could think of"; (2) fell "well outside this community's standards for sexual behavior"; and (3) would make the charged acts look "tame" in comparison.

¶29    *State v. Richardson*, 2013 UT 50, 308 P.3d 526, instructs that the probative value of prior sexual history may be greater when the prior acts are similar to the charged conduct. The *Richardson* court reasoned, "If a person is more likely to consent to sex with a past sexual partner, she is also more likely to consent to the kind of sexual relations she has had with a partner in the past." *Id.* ¶ 26. This suggests that to determine relative probative value, a court may assess the similarity between the sexual history and the charged acts.

¶30    Bravo's use of general descriptions did not give the district court the information it needed to gauge the evidence's probative value. Instead, he invited the district court to consider the immense variety of human sexual practices, focus on those practices that would make Bravo's charged conduct look "tame," and conclude that Victim's consent to whatever that past practice might have been was probative of whether Victim consented to the charged acts on the night of the alleged assault.[7]

---

6. (...continued)
admissible. *See* Utah R. Evid. 412(c)(3) ("Unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed.").

7. Bravo also stated that what he and Victim had done in the past was "consistent" with the charged conduct. Rule 412 does not

(continued...)

¶31    Bravo never described the required "specific instances" of their prior practices. *See* Utah R. Evid. 412(b)(2), (c)(1)(a). Had Bravo proffered, for example, that Victim had previously consented to being struck with a fist as part of their sexual history, or that she had previously consented to being picked up and thrown onto the bed, the district court could have weighed the probative value of that testimony to show consent against the evidence's prejudicial effects. But Bravo's proffer of "pretty much everything else one could think of" was unweighable. Bravo's broad and general descriptions prevented the district court from weighing the probative value of the evidence against the danger of unfair prejudice or confusion of the issues. The catch-all characterizations that Bravo proffered failed to satisfy the "specific instances" requirement of rule 412(b)(2), and the court did not exceed its discretion in excluding those statements.

¶32    The next category of excluded evidence consisted of Bravo's proffered testimony that he and Victim had previously engaged in consensual "rough sex" including bondage, sadomasochism, and autoerotic asphyxiation. Although more specific than the characterizations addressed above, this proposed testimony still failed to provide the district court with the information it needed to assess the prior acts' probative value on the issue of consent. The district court's repeated attempts to solicit more specific information from Bravo highlight the problems with Bravo's proffer.

¶33    At the pre-trial rule 412 hearing, the district court noted that "the specificity in the motion is fairly limited" and asked Bravo's

---

7. (...continued)
require a district court to accept a defendant's assessment of consistency at face value but instead requires the defendant to describe the conduct specifically so that the court can make the determination.

counsel if he could "be more particular."[8] When Bravo's counsel was unable to provide any more specificity due to Bravo's absence, the court described the type of evidence that it would consider admitting to prove consent:

> [I]f Mr. Bravo testified that the pattern that was engaged in [during the charged incident] was something we did regularly before and after marriage, and it was, it was consented to by her. We just did this as a matter of course. This is the way we, the way we engaged each other, that might be a little different . . . . [I]t would be hard for Mr. Bravo to understand that when they did it on one occasion it wasn't okay on the next occasion, I suppose he could argue.

When the district court revisited the issue on the first day of trial, the court again queried, "Is there something more specific that Mr. Bravo could proffer today as to what this rough sex means and what he would like to produce evidence of?" and "What specifically is [it] that Mr. Bravo would want to introduce evidence of? What are the practices?" Again, Bravo failed to provide the requested specificity.

¶34    The sexual practices Bravo identified as examples of the couple's previous rough sex—bondage, sadomasochism, and

---

8. Bravo's counsel argued that to provide the level of specificity the State requested, "all of us would have to keep detailed sex journals." However, the district court expressly stated that it was not asking for "time and date, and all those kinds of things." The court instructed that it wanted Bravo to proffer something along the lines of, "[W]e met up on a certain occasion, maybe I don't remember the date, but we met up on some occasion and here is what we did generally speaking." In other words, the court wanted Bravo to proffer enough detail to allow the court to assess both the probative value and potential unfair prejudice of the testimony.

autoerotic asphyxiation—encompass broad categories of sexual behavior that may or may not be similar to Victim's allegations. By way of example, Bravo argued that their history of consensual bondage demonstrated Victim's willingness to having a dog leash pressed against her neck. But Bravo did not describe what he meant when he said they had engaged in bondage. Bondage could mean having a ligature stretched around one's neck, or it could describe countless other variations on the theme of being restrained. In this case, the probative value of prior instances of consensual choking with leash-like instruments would be greater than that of testimony that the consensual bondage involved restraint of Victim's hands during sex, even though both acts could be described as bondage.

¶35     Bravo argues that his proffer that he and Victim engaged in autoerotic asphyxiation tends to prove that Victim consented to being choked with a dog leash. The State correctly notes the difference between autoerotic asphyxiation, which bears little resemblance to the charged conduct, and erotic asphyxiation, which could conceivably describe what Victim testified occurred. Bravo responds that everyone understood that when he proffered testimony concerning autoerotic asphyxiation, he really meant consensual strangulation.

¶36     The ambiguity in Bravo's proffer underscores the importance of the rule 412 requirement that the defendant proffer "specific instances of a victim's sexual behavior" and not general categories of conduct. Even if we were to assume that Bravo meant strangulation when he said autoerotic asphyxiation, the district court possessed little information to weigh the probative value of that information. Having a hand pressed on one's throat to restrict air flow differs from being held down by a dog leash wrapped around one's neck, and consent to the former may not necessarily be probative of consent to the latter.

¶37     Similarly, without knowing more about what Bravo meant by "rough sex," the court could not analyze how probative that history was to show that Victim consented to being held down by

her throat, picked up, thrown onto a bed, and flipped over onto her stomach. Without the detail the district court repeatedly requested, the court was hamstrung in its ability to conduct the rule 403 analysis. *See State v. Boyd*, 2001 UT 30, ¶ 41, 25 P.3d 985. On this factual record, the district court did not abuse its discretion in denying Bravo's rule 412 motion as to the proffered "rough sex" evidence.

¶38    The only evidence that Bravo described with any specificity was the type of evidence *Richardson* addressed—that Bravo and Victim had previously engaged in anal sex.[9] As in *Richardson*, one of the charges against Bravo involved an accusation of nonconsensual anal intercourse. Evidence that Bravo and Victim previously engaged in anal sex would have probative value under *Richardson*'s logic because that evidence would make Bravo's consent defense "easier to accept." *See* 2013 UT 50, ¶ 42.

¶39    The district court stated as to all of the excluded evidence that "even if there is a sliver of relevance in there . . . the relevance would be outweighed by the danger of unfair prejudice." *See* Utah R. Evid. 403. The district court articulated its ruling in terms of "a sliver of relevance"—which, as explained above, is out of step with *Richardson*'s instruction that relevance is binary. In context, however, the district court was referencing the probative value of the evidence. By its express terms, rule 403 recognizes "probative value" as something to be weighed and balanced. *See* Utah R. Evid. 403.

---

9. The rule 412 proffer in *State v. Richardson* was more specific than Bravo's proffer here and more probative to show consent because it spoke to an established practice between the defendant and the victim. *See* 2013 UT 50, ¶ 21, 308 P.3d 526. The proffer in *Richardson* was that the victim had routinely engaged in anal sex with the defendant when the victim was menstruating. That proffer closely matched the allegations against the defendant, who was alleged to have anally penetrated the victim while she was menstruating. *See id.* ¶ 21.

¶40    We agree with the district court that in light of the totality of the allegations against Bravo, the evidence that he and Victim had previously engaged in anal sex added little to prove consent in this case. The purpose of the anal-sex evidence was to provide contextualizing detail about the prior sexual relationship and to suggest that Victim was more likely to have consented to anal sex during the charged incident because she had consented to the same act with Bravo in the past. Victim's allegations, however, involved much more than nonconsensual anal sex. Victim testified that the Bravo's assault on her began with him forcibly entering her apartment several weeks after being told to leave and never return. Bravo then threw Victim to the floor, choked her, raped her vaginally, and carried her into her bedroom, where he then penetrated her anally. When viewed in the context of the entirety of Bravo's alleged actions, evidence that Victim had consented to anal sex in other circumstances would not have much probative value to demonstrate that she had consented to it on this occasion.

¶41    By contrast, the testimony posed a significant danger of unfair prejudice to Victim in the form of revealing intimate and potentially embarrassing details about her sexual history. *See State v. Richardson*, 2013 UT 50, ¶ 31, 308 P.3d 526 (acknowledging, with regard to anal-sex evidence, "the most obvious 403 argument—that the unconventional nature of the sexual conduct involved would lead to unfair prejudice"); *Boyd*, 2001 UT 30, ¶ 46 (acknowledging "the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" (citation and internal quotation marks omitted)). The evidence also raised the specter of the "infusion of sexual innuendo into the fact finding process," which could confuse the issues or mislead the jury. *See Boyd*, 2001 UT 30, ¶ 46 (citation and internal quotation marks omitted). In light of the low probative value and the potential danger of unfair prejudice and confusing the issues for the jury, the district court did not abuse its discretion in excluding Bravo's testimony that Victim had previously consented to anal sex.

CONCLUSION

¶42    Under the binary concept of relevance explained in *Richardson*, the district court erred in determining that the rule 412 evidence Bravo offered was irrelevant to the issue of consent. However, the potential danger for that evidence to create unfair prejudice to Victim was substantial, and the probative value of the evidence was either quite low or unweighable because of the lack of specificity in Bravo's proffer. The district court therefore acted within its discretion in excluding that evidence under rule 403. We affirm Bravo's convictions.

_____