2023 UT App 34

THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DUSTIN BRENT RALLISON,
Appellant.

Opinion
No. 20200667-CA
Filed April 6, 2023

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 191100093

Freyja Johnson and Emily Adams,
Attorneys for Appellant

Sean D. Reyes and Jonathan S. Bauer,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1 This case comes to us on interlocutory appeal of the district court's ruling on the admissibility of several items of evidence under Utah's version of the "rape shield" rule of evidence, which generally prohibits evidence at trial of a victim's sexual behavior or disposition. Five women have accused Dustin Brent Rallison of physical and sexual assault occurring while they worked as servers at a restaurant he owned and operated. Prior to trial in this case, Rallison sought to admit, and the State sought to exclude, seventeen items of evidence that may implicate the rape shield rule. The district court excluded sixteen of the seventeen items,

and Rallison appeals the exclusion of six of those items. We affirm in part and reverse in part.

BACKGROUND

¶2    Rallison and his wife owned and operated a restaurant where the five alleged victims worked as servers. One of the servers—Tiffany[1]—reported to police that, as she was leaving work after the restaurant closed one evening, Rallison ran out and grabbed her breasts over her shirt from behind her. She reported that as she kept walking to her car and asked him what he was doing, he reached down her shirt and pinched and twisted her nipples over her bra. She further stated that she told him he was hurting her, but he reached inside her bra and pinched, pulled, and twisted her nipples, causing both nipples to bleed. She reported the alleged assault to police the next day, and a police detective interviewed other employees at the restaurant.

¶3    Four other servers told police that Rallison had also physically and sexually assaulted them at the restaurant. The servers reported that Rallison repeatedly slapped or punched them on the buttocks or breasts. They alleged that Rallison put them "in choke holds to the point that they would pass out or almost pass out," sometimes pressing his body against an alleged victim "to where [she] could feel his private parts on [her] butt." Some claimed that Rallison touched them on their breasts or buttocks beneath their clothing. One stated that Rallison forcefully poked the tip of his finger into her "butt hole" through her leggings.

¶4    Rallison was charged with, among other things, four counts of sexual battery for allegedly touching the buttocks or breasts of some of the women, as well as three counts of forcible

---

1. A pseudonym. We discuss the other alleged victims without distinguishing them, in an effort to obscure their identities.

sexual abuse for allegedly touching the bare breasts or buttocks of some of the women. To convict a defendant of sexual battery, the State must prove that a defendant "intentionally touches, whether or not through clothing, the anus, buttocks, or any part of the genitals of another person, or the breast of a female person, and the actor's conduct is under circumstances the actor knows or should know will likely cause affront or alarm to the person touched." Utah Code § 76-9-702.1(1). To convict a defendant of forcible sexual abuse, the State must prove that a defendant touched "the anus, buttocks, pubic area, or any part of the genitals of another individual," touched "the breast of another individual who is female," or took "indecent liberties with another individual" and that the defendant acted "without the consent" of the other and with the intent to "cause substantial emotional or bodily pain to any individual" or to "arouse or gratify the sexual desire of any individual." *Id.* § 76-5-404(2).

¶5     At a preliminary hearing, the magistrate heard testimony from each of the alleged victims. Following the hearing, the State filed a motion in limine seeking exclusion of certain testimony under rule 412 of the Utah Rules of Evidence. Rallison opposed the State's motion and moved to admit seventeen pieces of evidence. Of these, six pieces of evidence[2] are at issue in this appeal:

---

2. Rule 412 indicates, "Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard. Unless the court orders otherwise, the motion, related materials, and the record of the hearing are classified as protected." Utah R. Evid. 412(c)(3). The district court acted accordingly, and the proceedings below have been classified as protected. However, the rule does not address the handling of the evidence upon appeal. We recognize that "[t]he purpose of rule 412 is to prevent the accusers in sexual

(continued…)

- Item 5: Rallison claims that the alleged victims showed him and the restaurant cooks nude selfies on their phones.[3]

- Item 9: On the night of Rallison's alleged assault against Tiffany in the parking lot and before going to work, Tiffany engaged in the following text exchange with her friend:

  [Tiffany]: I saw that [Rallison's wife] wasn't going to be at the [restaurant] tonight. Meaning either [a cook] is closing up or [Rallison] is. And I started feeling F***ing scared. Wtf. If [Rallison] is closing that means I have make sure I'm never alone by him so I get my f***ing body wrecked by him. F*** sexual predators lol

  [Friend]: Hahahaha I think it's funny that you got legit scared

---

assault cases from being subjected to 'unwarranted inquiries into [their] sexual behavior.'" *State v. Clark*, 2009 UT App 252, ¶ 30, 219 P.3d 631 (quoting *State v. Tarrats*, 2005 UT 50, ¶ 20, 122 P.3d 581), *cert. denied*, 225 P.3d 880 (Utah 2010). Because we protect the identities of the alleged victims and because we ultimately hold that most of the evidence at issue is admissible, we do not feel that describing that evidence here subjects the alleged victims to "unwarranted inquiries into [their] sexual behavior." *See id.*

3. There is no testimony in the transcript that supports Rallison's assertion that such evidence exists except as pertains to the separate item 10. In this interlocutory appeal, we discuss this item under the assumption that such evidence exists for the sake of determining admissibility based on the possibility that such evidence may be brought forward.

[Tiffany]: He was really rough on Monday with my boobs so I am a little scared. My right nipple was bleeding.

[Friend]: I hate that. It's not funny. I'm sorry you get abused at work By your hot boss. (emoji) at least he's no tugly lol

[Tiffany]: I feel like it would be easier if he was ugly. And not married . . . to my other

[Friend]: Hahahaha me either. I'd probs give in cause I know he would choke the f*** out of me then I would just squirt down my leg then it would be game on.

[Tiffany]: Hahaha I just don't know if I would f*** him because I want too or f*** him because he'll fire me if I don't lol.

Tiffany testified that she considered this hypothetical discussion about sex with Rallison to be a joke.

- Item 10: On the night of the alleged parking lot assault, Tiffany and Rallison were comparing phones, and Rallison said Tiffany didn't have nude selfies on her phone; she responded that she did but kept them in a password-protected app. Tiffany testified that Rallison "pressured [her] into giving . . . him the code." Rallison looked at the photos.

- Item 11: The alleged victims slapped each other's buttocks at work.

- Item 12: Rallison claims that male cooks slapped others' buttocks at work and that at least one alleged victim slapped the cooks' buttocks. Rallison also asserts that the alleged victims made flirtatious and sexual comments to the cooks and others at the restaurant, sometimes in front of Rallison.

- Item 17: One of the servers told the detective, "[I]n the beginning it was like mutual, you know? How I said, like everyone was flirting and messing around. It's all just like fun. And I feel that's like what led him to think that it was okay because then it was." This activity may have included reciprocal buttocks slapping.[4]

Rallison alleged that items 11, 12, and 17 were relevant to the sexual battery charges and that items 5, 9, and 10 were relevant to the forcible sexual abuse charges.

¶6 The district court excluded sixteen of the seventeen items discussed in the motions in limine, including all six items at issue in this appeal, ruling that items 9, 11, and 12 were barred by rule 412(a) and that items 5, 10, and 17 should be excluded under rule 403 of the Utah Rules of Evidence. Rallison petitioned for permission to appeal the district court's interlocutory order respecting these six items, and this court granted his petition.

ISSUE AND STANDARD OF REVIEW

¶7 Rallison contends that the district court improperly excluded six items of evidence. "We afford district courts a great

---

4. Rallison presents this as "mutual and consensual touching of the buttocks," but it is not entirely clear from the preliminary hearing testimony whether the alleged victim ever touched Rallison's buttocks.

deal of discretion in determining whether to admit or exclude evidence and will not overturn an evidentiary ruling absent an abuse of discretion." *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981 (cleaned up). "But whether the district court applied the proper legal standard in assessing the admissibility of that evidence is a question of law that we review for correctness." *Id.* (cleaned up). A court abuses its discretion when it applies the wrong legal standard or when "its decision to admit or exclude evidence is beyond the limits of reasonability." *Id.* (cleaned up).

ANALYSIS

¶8     We agree with the district court that items 11 and 12—other than evidence showing cooks slapping each other's buttocks—should be excluded under rule 412(a) of the Utah Rules of Evidence. Evidence of cooks slapping each other's buttocks does not involve the alleged victims and is therefore beyond rule 412's purview—we reverse on this point. We also conclude that the district court incorrectly applied rule 412 to item 9 and exceeded its discretion in excluding items 5, 10, and 17 under rule 403 of the Utah Rules of Evidence. Therefore, we affirm in part and reverse in part.

I. Rule 412: Items 9, 11, and 12

¶9     Under rule 412, evidence offered either "to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" is "not admissible in criminal . . . proceedings involving alleged sexual misconduct." Utah R. Evid. 412(a). However, the rule contains an exception for "specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent," so long as such evidence "is otherwise admissible." *Id.* R. 412(b)(2). Another exception permits admission of evidence "whose exclusion would violate the defendant's constitutional rights." *Id.* R. 412(b)(3).

¶10　We first note that evidence of the cooks slapping each other's buttocks—included in Rallison's identification of item 12 but not the district court's—is beyond the purview of rule 412 as it does not involve the alleged victims. To the extent that the district court barred this testimony, we reverse. But as to evidence that the alleged victims engaged in buttocks slapping with the cooks or with each other, we affirm the district court's decision.

¶11　Rule 412 governs admission of "evidence that directly refers to sexual activities or thoughts." *State v. Martin*, 2002 UT 34, ¶ 42, 44 P.3d 805 (cleaned up). Our supreme court has indicated "that rule 412 should be construed broadly in order to fully effectuate the policy considerations underlying its prohibitions." *Id*. Accordingly, rule 412 covers "all evidence that may have a sexual connotation for the fact finder." *State v. Tarrats*, 2005 UT 50, ¶ 22, 122 P.3d 581 (cleaned up).

A.　Items 11 and 12

¶12　Rallison argues that items 11 and 12—which include "butt slapping," flirting, and discussing sexual matters between and among the servers and cooks—do not fall under rule 412 because they are not evidence of "other sexual behavior" or of the alleged victims' "sexual predisposition." *See* Utah R. Evid. 412(a). He asserts that these items are "sexually innocuous."

¶13　In *State v. Martin*, 2002 UT 34, 44 P.3d 805, our supreme court determined that evidence that the alleged victim had previously accepted a ride from a stranger—offered to show the victim's "casual attitude toward strangers," her "impulsiveness," and her "irresponsibility"—was "sexually innocuous." *Id.* ¶¶ 41–42 (cleaned up). The court reasoned that "a jury could no more reasonably deduce . . . sexual act[ivity] with the stranger than it could conclude they played board games, built model airplanes, or ate sandwiches." *Id.* ¶ 42.

¶14 The behavior at issue here, by contrast, is not sexually innocuous. First, the Utah Legislature has made it clear that touching another person's buttocks may constitute a sex crime. *See, e.g.*, Utah Code § 76-5-404(2) (forcible sexual abuse); *id.* § 76-9-702.1(1) (sexual battery); *id.* § 76-5-404.1(2) (sexual abuse of a child). Rallison is himself facing sexual battery charges for the same type of touching.

¶15 Second, rule 412 covers "all evidence that may have a sexual connotation for the fact finder," *State v. Boyer*, 2020 UT App 23, ¶ 29, 460 P.3d 569 (cleaned up), *cert. denied*, 466 P.3d 1075 (Utah 2020), and the evidence in question may have such a connotation. Flirting satisfies this standard because it may imply sexual attraction or desire and can be interpreted as an invitation for further contact, including sexual contact. *See Ferencich v. Merritt*, 79 F. App'x 408, 415 (10th Cir. 2003) ("[A supervisor's] testimony that he interpreted plaintiff's act of showing him her tongue ring as flirting, because of its perceived sexual use, was relevant to both the issue of whether his sexual conduct was 'unwelcome,' and whether [personnel director and employer] should have known that plaintiff was being harassed."). Sexual comments inherently carry sexual connotations. And while we can perhaps envision an isolated context in which a buttocks slap might, to some, be considered non-sexual (e.g., a "way to go" bump of encouragement in the middle of a sporting event), we think it safe to say that buttocks slapping—especially in a non-athletic workplace—almost always carries a sexual connotation. *See Bearer v. Teva Pharms. USA, Inc.*, No. 19-5415, 2021 WL 4145053, at *27 (E.D. Pa. Sept. 8, 2021) (discussing an executive's slapping of an employee's buttocks as "inappropriately and offensively touch[ing] an intimate area of her body" and reasoning that "undoubtedly, such conduct is physically threatening and humiliating" (cleaned up)); *Vergara v. Keyes*, No. 3:20-cv-01460, 2020 WL 7778080, at *1–2 (D.N.J. Dec. 30, 2020) (discussing as alleged sexual battery a co-worker slapping an officer's buttocks). Such behavior is undeniably more sexually charged than getting

a ride from a stranger, as in *Martin*. Furthermore, touching a person's private or intimate body parts at work may very well be grounds for a sexual harassment claim if nonconsensual. *See generally Wilcox v. Corrections Corp. of Am.*, 892 F.3d 1283, 1285–86 (11th Cir. 2018) (discussing employee's sexual harassment claim where coworker "slapped [employee] on the buttocks twice"). And buttocks are generally considered to be private or intimate body parts. *See, e.g., Bearer*, 2021 WL 4145053, at \*27 (calling female employee's buttocks "an intimate area of her body"). The fact that some of the slapping at issue in item 11 may have been consensual does not make it nonsexual.

¶16 Third, the alleged victims' testimony supports the sexualized nature of the buttocks slapping. As to the cooks slapping the servers' buttocks, multiple servers testified that it made them uncomfortable, presumably because of the intimate nature of the touching. One server testified that she was uncomfortable with the cooks doing it and she "told them off, told them it was not okay," after which the cooks stopped. Another testified that she was "not at all" okay with it, stating, "I was like, don't do that. I'm very uncomfortable about that. I don't like that." And a third testified that she "let [the cook] know that it wasn't okay." On the other hand, the testimony is clear that the women were okay with the intra-server slapping described in item 11.[5] But their comfort with it appears to stem from the

---

5. Rallison would like us to apply *State v. Denos*, 2013 UT App 192, 319 P.3d 699, *cert. denied*, 329 P.3d 36 (Utah 2014), to find that buttocks slapping by the cooks against the servers falls outside of rule 412(b)(2) because it is not the alleged victims' sexual behavior. *Id.* ¶ 16. In *Denos*, the court concluded that evidence that the defendant entered the room where the alleged victim was sleeping to stop another man attempting to assault her was not barred by rule 412 because it did "not relate to [the victim's] sexual behavior or predisposition." *Id.* But Rallison himself

(continued…)

intimacy of their friendship and not because the activity was non-sexual: one server stated that she was okay with it because they were "best friends," and at least one server testified that not all women employees were involved in such touching, saying that it was "a select few because we're close friends." She also testified that these close friends sometimes touched each other's breasts, again suggesting that they found the touching acceptable not because it was categorically nonsexual but because they were intimate friends.

¶17    For these reasons, items 11 and 12 are not sexually innocuous. Rather, they are evidence of "other sexual behavior" or "sexual predisposition," *see* Utah R. Evid. 412(a), and the district court was correct in determining that these items fall within the purview of rule 412(a).

¶18    Nonetheless, Rallison argues that items 11 and 12 are admissible under rule 412(b)(3) because their exclusion would violate his constitutional rights. We disagree. Rule 412(b)(3) provides an exception for rule 412 testimony "whose exclusion would violate the defendant's constitutional rights." *Id.* R. 412(b)(3). And "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete

---

presents "'butt-slapping' amongst the staff"—including "some female servers slapping male cooks' buttocks"—as "routine" and claims that it "goes to the heart of the culture and climate" of the restaurant. If the slapping was reciprocal, *Denos* would not apply because the slapping would include the alleged victims' sexual behavior. And although the testimony as to whether servers actually slapped cooks' buttocks is limited, Rallison cannot have his cake and eat it too by claiming that it was reciprocal while simultaneously implying that cook-on-server slapping was one-sided assault like in *Denos*. Therefore, we do not apply *Denos*. If the factual development differs at trial, the district court may find *Denos* applicable.

defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up); *State v. Robinson*, 2018 UT App 103, ¶ 37, 427 P.3d 474, *cert. denied*, 432 P.3d 1226 (Utah 2018). But this exception applies only where exclusion of the evidence "foreclose[s] any meaningful avenue for presenting a defendant's fundamental defense to charges against him." *See State v. Thornton*, 2017 UT 9, ¶ 74, 391 P.3d 1016; *see also State v. Nunez-Vasquez*, 2020 UT App 98, ¶ 32, 468 P.3d 585, *cert. denied*, 474 P.3d 945 (Utah 2020). That is not the case here.

¶19 Rallison asserts that items 11 and 12 address a critical element of sexual battery: that "the actor's conduct is under circumstances the actor knows or should know will likely cause affront or alarm to the person touched." *See* Utah Code § 76-9-702.1(1). Rallison argues that "touching that would 'likely cause affront or alarm' in some instances may not 'likely cause affront or alarm' in every instance," *see id.*, and that items 11 and 12 "demonstrated that the workplace culture was playful and included employees touching one another and slapping each other on the buttocks in the context of horseplay and joking around." Accordingly, Rallison says he "can argue that the State did not meet its burden of showing that he 'knew or should have known certain conduct was likely to cause affront or alarm,'" *see id.*, but he can do so only by "pointing to the circumstances under which the touching occurred." If he cannot show that "the staff routinely touched and slapped one another's buttocks, including in joking and horseplay," he asserts, he will be "effectively bar[red] . . . from mounting a defense to these charges."

¶20 We are not persuaded. For item 12, Rallison fails to articulate how the servers flirting and making sexual comments to people other than Rallison could have impacted how the servers viewed touching from him. Regarding the cooks slapping servers' buttocks, the servers' testimony made it clear that the alleged victims were uncomfortable with the touching. *See supra* ¶ 16. Rallison does not explain how—in the face of this

testimony—this slapping could be interpreted as mere horseplay and support his defense. And Rallison provides no argument for why buttocks slapping from him would not cause affront or alarm where servers testified that buttocks slapping from the cooks did so. Furthermore, as to the existence of buttocks slapping at work, Rallison is free to offer testimony of such activity that does not involve the alleged victims, including buttocks slapping among the male cooks. Therefore, this testimony is not essential to Rallison's ability to present a complete defense and does not come in under the rule 412(b)(3) exception.

¶21 Likewise, item 11 does not qualify for this exception. Rallison fails to explain how the servers' comfort with item 11—buttocks slapping among close friends and peers—translates to comfort with him slapping their buttocks. Rallison was their significantly older boss.[6] The power differential between Rallison as owner-operator and the servers negates the homogeneity of item 11 necessary for the conclusion Rallison proposes. As one server testified about server-on-server buttocks slapping, "That's different. They're my best friends. . . . It's not my boss." Given the servers' testimony and the undeniable differences in circumstances between the servers' slapping and Rallison's, Rallison's argument that item 11 indicates a playful work environment essential to his defense falls flat. The circumstances between the two are so different that no reasonable juror could believe that item 11 offers the defense Rallison proposes. While Rallison is free to testify that he believed his actions would not cause affront or alarm, the testimony of the servers with respect to their slapping of each other's buttocks does not support this and therefore cannot be essential to Rallison's defense.

6. At the time of the preliminary hearing, the alleged victims ranged in age from seventeen to twenty-one. Rallison was thirty-three. The youngest of the alleged victims testified that she believed Rallison began slapping her buttocks when she was still fifteen.

Accordingly, the district court did not abuse its discretion in concluding that item 11 also fails to qualify for the exception under rule 412(b)(3).

B.     Item 9

¶22    The district court excluded this item—the text exchange between Tiffany and her friend before the shift of the alleged parking lot assault—because it concluded that the exchange did "not concern the alleged victim's sexual behavior with respect to [Rallison] because [Rallison] was not involved in the communications." In so ruling, the district court misapplied the exception under rule 412(b)(2). The plain language of the rule does not require the "person accused of the sexual misconduct" to be aware of the "specific instances of a victim's sexual behavior with respect to th[at] person." Utah R. Evid. 412(b)(2). *See also State v. Varlas*, 787 S.E.2d 670, 678 (W. Va. 2016) (admitting text messages sent by a third party to the alleged victim that discussed sexual conduct between the defendant and the alleged victim). We do not find any requirement of the person's awareness in the language "with respect to." Accordingly, the district court erred in ruling that rule 412(b)(2)'s exception did not apply merely because Rallison was not aware of the messages at the time of the alleged assault.

¶23    The State argues that this item should be excluded because it does not qualify as a "specific instance[] of a victim's sexual behavior" with respect to Rallison. *See* Utah R. Evid. 412(b)(2). While the rule 412(b)(2) exception might permit admission of "statements in which the alleged victim expressed an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving the specific accused," R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence*, 1 Utah Prac. *Rule 412*, Westlaw (updated Nov. 2022), the State asserts that the statement at issue was merely a "cynical anecdote" from Tiffany, not an expression of intent to

engage in sexual activity with Rallison or a sexual fantasy about him. If anything, the State argues, this item is "ambiguous about any sexual intent or fantasizing regarding Rallison." We too do not read item 9 as expressing Tiffany's intent to engage in sexual intercourse with Rallison—we acknowledge that its discussion of intercourse is entirely hypothetical, and we read the text exchange as a whole as quite damning to Rallison—but we believe the State applies this exception too narrowly. The text exchange clearly discusses "specific instances" of hypothetical sexual behavior between Tiffany and Rallison, as well as Tiffany's thoughts—even if made in jest and even if negative—about potential sexual behavior with Rallison. Therefore, we find unpersuasive the State's position that this item does not fall under rule 412(b)(2)'s exception.

¶24   Alternatively, the State argues that this item should be excluded under rule 403 because it has low probative value and carries a high risk of unfair prejudice. We consider this argument in our discussion of rule 403 below. *See infra* ¶¶ 36–38. Because the district court applied the wrong legal standard as to this item, it exceeded its discretion, and we reverse its ruling that item 9 was inadmissible under rule 412.

II. Rule 403: Items 5, 9, 10, and 17

¶25   Evidence that comes within one of the exceptions to rule 412 must still pass muster under rule 403. *See* Utah R. Evid. 412(b); *State v. Beverly*, 2018 UT 60, ¶ 55, 435 P.3d 160 ("Rule 412 explicitly provides that before any evidence is admitted through one of its exceptions, it must also be 'otherwise admissible' under the rules of evidence. So a defendant attempting to admit evidence under rule 412(b)(1) must also meet the requirements of rule 403." (cleaned up)). Under rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403.[7]

---

7. We acknowledge that our supreme court has stated that "[w]hen applying rule 403 to the admissibility of a rape victim's past sexual conduct, there is a presumption of inadmissibility," *State v. Boyd*, 2001 UT 30, ¶ 41, 25 P.3d 985, such that this "evidence is admissible only when the court finds under the circumstances of the particular case such evidence is relevant to a material factual dispute and its probative value outweighs the inherent danger[s]" listed in rule 403, *id.* (quoting *State v. Williams*, 773 P.2d 1368, 1370 (Utah 1989)); *see also State v. Beverly*, 2018 UT 60, ¶ 55, 435 P.3d 160; *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989); *State v. Ashby*, 2015 UT App 169, ¶ 32, 357 P.3d 554, *cert. denied*, 363 P.3d 523 (Utah 2015); *State v. Bravo*, 2015 UT App 17, ¶ 19, 343 P.3d 306, *cert. denied*, 352 P.3d 106 (Utah 2015).

However, our supreme court has recently "repeatedly eschewed extra-textual or contra-textual judicial glosses on the Utah Rules of Evidence." *State v. Biel*, 2021 UT 8, ¶ 25, 484 P.3d 1172; *see, e.g., State v. Lowther*, 2017 UT 34, ¶ 30 n.40, 398 P.3d 1032 (pointing "to the plain language of rule 404(b) for the standard for the admissibility of evidence" and repudiating a prior characterization of rule 404(b) as "inclusionary"). And an application of rule 403 that presumes inadmissibility for rule 412 evidence is not indicated in the plain language of rule 403, which states that evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following." Utah R. Evid. 403. Accordingly, we are not certain whether this presumption continues to be applicable, and we wait for the supreme court to weigh in on this issue.

However, on the facts before us, we are satisfied that the probative value of these items outweighs their associated risks such that the outcome of this case does not rely on our application of a presumption one way or the other.

¶26   Evidence is unfairly prejudicial where it "has an undue tendency to suggest decision upon an improper basis." *State v. Barney*, 2018 UT App 159, ¶ 20, 436 P.3d 231 (cleaned up). Evidence may also cause unfair prejudice when it "reveal[s] intimate and potentially embarrassing details" about victims. *State v. Bravo*, 2015 UT App 17, ¶ 41, 343 P.3d 306, *cert. denied*, 352 P.3d 106 (Utah 2015). And in particular, sexual evidence presented under rule 412(b)(2) may have a "propensity . . . to distort the jury's deliberative process, thereby confusing or misleading the jury." *Id.* ¶ 21 (cleaned up).

¶27   On the other hand, "the probative value of prior sexual history may be greater when the prior acts are similar to the charged conduct." *Id.* ¶ 29. This is because a person is "more likely to consent to the kind of sexual relations [that person] has had with a partner in the past." *State v. Richardson*, 2013 UT 50, ¶ 26, 308 P.3d 526.

A.   Items 5 and 10

¶28   For items 5 and 10, we conclude that the district court exceeded its discretion in excluding purported evidence that the servers showed Rallison nude selfies and evidence that Tiffany gave Rallison the password to the app containing nude selfies shortly before the alleged assault in the parking lot. First, we note that we agree that these items fall under the exception in rule 412(b)(2) because they include allegations that the servers shared sexually explicit images with Rallison, the person accused of the sexual misconduct.[8] Moving to the rule 403 analysis, the district

---

8. Rallison also asserts that the alleged victims shared sexually explicit materials with the cooks. Such evidence does not qualify for the exception in rule 412(b)(2) because it does not involve Rallison. Therefore, it must be excluded under rule 412. Our holding as regards item 5 being admissible does not apply to this purported evidence, which was properly excluded.

court ruled these items inadmissible "because the probative value of any alleged grant of permission to view nude selfies . . . is substantially outweighed by the danger that any such evidence will cause unfair prejudice, confuse the issues, or mislead the jury." The court reasoned that "[t]his evidence may unfairly signify to the jury that granting permission to view selfies amounts to permission to forcibly being touch[ed] without consent" and that "[n]o reasonable person could [so] conclude." We disagree with the district court that the risk of harm outweighs the probative value, and we reverse this ruling.

¶29 This evidence has some probative value. Evidence that one or more alleged victims shared sexually explicit material with Rallison may inform the jury's understanding of the relationships between Rallison and the alleged victims. This is important because, to convict Rallison of forcible sexual abuse, the State must prove that Rallison's touching was done "without the consent" of the other individual. *See* Utah Code § 76-5-404(2). While we agree with the district court that sharing sexually explicit material does not necessarily convey consent for touching generally or specifically, we think that this evidence has some use for the jury in determining what type of sexual relationship with Rallison—if any—the alleged victims consented to. This is particularly true for item 10 given that it occurred in close temporal proximity to the alleged parking lot assault.

¶30 We acknowledge that there is some risk of prejudice due to the embarrassing nature of sharing nude selfies with one's older, married boss. But this information is not as intimate or embarrassing as some rule 412 evidence that has been excluded under rule 403. *See, e.g., State v. Boyd*, 2001 UT 30, ¶¶ 33, 43, 25 P.3d 985 (excluding evidence of previous sexual intercourse on the evening in question where it had "little probative value" to the question of consent as it was not alleged to be "rough" and would not explain bruising); *Bravo*, 2015 UT App 17, ¶ 41 (concluding accuser's consensual anal sex with ex-husband after

their divorce carried "significant danger of unfair prejudice" because it was unconventional). Furthermore, Rallison does not seek to admit as exhibits what was allegedly shared with him—which would undoubtedly be more embarrassing for the alleged victims—but merely the alleged fact that they shared sexually explicit material with him. And we think that evidence that a person has shared pictures, even explicit ones, is here—and likely, as a rule—less intimate, embarrassing, and prone to causing unfair prejudice than evidence of engaging in anal sex or sexual intercourse. *See Richardson*, 2013 UT 50, ¶¶ 21, 31; *Boyd*, 2001 UT 30, ¶¶ 33, 43; *Bravo*, 2015 UT App 17, ¶ 41.

¶31 Additionally, the servers' testimonies as to the circumstances of the sharing may reduce the risk of unfair prejudice or confusion of the issues. Indeed, Tiffany testified at the preliminary hearing that Rallison, in his position of authority as her boss, pressured her into sharing the password to the folder containing her photos; this fact may reduce embarrassment associated with the sharing and comports with an image of the work environment Rallison created—and the sexual activity he allegedly engaged in with the servers therein—as oppressive rather than consensual. At this time, there is no actual evidence in the record of other servers sharing nude selfies with Rallison, but if it arises, any involved servers would also be able to testify to the circumstances. Furthermore, we are confident that an appropriate limiting instruction can prevent jury confusion on this topic.

¶32 Accordingly, we conclude that the district court exceeded its discretion in excluding these items because their probative value outweighs the risks of unfair prejudice, confusion, or misleading the jury. The court was unreasonable in ruling otherwise because it erroneously believed that the jury could not distinguish between the actions described in these items and being forcibly touched. We believe that a jury can so distinguish, particularly with a limiting instruction, and we determine that the jury should be able to hear this evidence.

B. Item 17

¶33    Likewise, we conclude that the district court exceeded its discretion in excluding item 17. This item comprises evidence that one server initially viewed the buttocks slapping and "messing around" between herself and Rallison as mutual and consensual. First, we must determine whether item 17 qualifies for an exception to rule 412, and we determine that it does. For the reasons explained above, *see supra* ¶¶ 14–17, the buttocks slapping is "evidence of specific instances of a victim's sexual behavior with respect to the person accused of sexual misconduct," and it therefore qualifies for the exception in rule 412(b)(2).

¶34    Next, we consider whether it was properly excluded under rule 403, and we conclude that it was not. This evidence has high probative value. Rallison is charged with slapping the buttocks of the server whose testimony is at issue, and her testimony indicates that at some point their buttocks slapping was mutual and consensual. The district court excluded this evidence based on its belief that the relevant charge did not involve buttocks slapping, but it did.[9] Because "the probative value of prior sexual history

_____

9. The district court asserted that "the State charged Defendant with sexual battery 'for [allegedly] rubbing his penis against the [alleged] victim's buttocks, choking [her], and grabbing [her] bare breasts,' not 'for slapping this victim's buttocks.'" (Alterations in original.) The court relied on language from the State's memorandum opposing Rallison's rule 412 motion. Accordingly, the court reasoned that "[t]his evidence may unfairly signify to the jury that engaging in butt touching amounts to permission to commit the acts Defendant is accused of. . . . It does not." However, the State indicated at the preliminary hearing that this count was based on Rallison touching this server's buttocks after she no longer consented. And the State's brief cites the server's testimony that Rallison "continued to slap her on the butt after

(continued…)

may be greater when the prior acts are similar to the charged conduct," *Bravo*, 2015 UT App 17, ¶ 29, and because a person is "more likely to consent to the kind of sexual relations [that person] has had with a partner in the past," *Richardson*, 2013 UT 50, ¶ 26, the probative value of this evidence is particularly high. The server's acknowledged initial consent to buttocks slapping is material to whether she continued to consent to that same action throughout her employment.

¶35    While there may be some negligible risk of prejudice or confusion, here the probative value substantially outweighs any such risk. Reciprocal buttocks slapping is far less embarrassing than other sexual evidence determined to be properly excluded in other cases. *See, e.g.*, *Boyd*, 2001 UT 30, ¶¶ 33, 43; *Bravo*, 2015 UT App 17, ¶ 41. And there should be little confusion for the jury that the question is whether and when consent was withdrawn. Accordingly, it was unreasonable for the district court to exclude item 17, and in doing so it exceeded its discretion.

C.    Item 9

¶36    In addition to its unavailing argument that Item 9 should be excluded under rule 412, the State presents an alternative argument that this item should be excluded under rule 403 because it has low probative value and carries a high risk of unfair prejudice. The State applies our analysis in *State v. Bravo*, 2015 UT App 17, 343 P.3d 306, *cert. denied*, 352 P.3d 106 (Utah 2015), indicating that probative value increases when evidence deals with activity similar to that alleged, *id.* ¶¶ 29, 40–41, and asserts that there is "a disconnect between the hypothetical sexual intercourse [Tiffany] texted about and Rallison's alleged act of following [her] out to her car after a work shift, grabbing her breasts from behind, and then reaching under her shirt and bra to

---

she told him it made her uncomfortable" as supporting evidence on this charge.

twist her nipples over her objection." The State argues that this item's "low probative value is significantly outweighed by its potential for unfair prejudice" because it could "unfairly signify to the jury" that Tiffany's "frank sexual communications with her friend somehow implied consent to being assaulted by Rallison" and because it would reveal intimate and potentially embarrassing information: "private communications of a frank, sexual nature about her married boss." The State declares that "[a]dmission of evidence under rule 412(b)(2) 'necessarily includes a determination that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Id.* ¶ 26. And it asserts that this item's "low probative value is substantially outweighed by the danger of unfair prejudice or confusing the jury."

¶37 We disagree with the State that this item has low probative value. Tiffany's discussion with her friend on the night of the alleged parking lot assault of hypothetical sexual behavior with respect to Rallison is probative of whether she consented to engage in sexual behavior with Rallison later that night. And *Bravo* does not negate an item's probative value simply because the behavior in the evidence is not identical to that which was alleged. Besides, in the text exchange, Tiffany tells her friend that Rallison roughly touched her breasts and made her nipple bleed, and Rallison is accused of nonconsensual touching of her breasts, so there is high similarity on this point. And Tiffany's expressed fear of Rallison and negative feelings about his touching during a previous shift will inform a jury's understanding of whether Tiffany consented to Rallison touching her that night.

¶38 Additionally, several circumstances reduce the risk of embarrassing Tiffany by admitting the text exchange. First, the exchange begins with Tiffany expressing her fear of working with Rallison that night because she believes he may hurt her, and she also suggests that Rallison is a sexual predator. There is nothing embarrassing about this, and we believe this is likely to make the

jury more sympathetic to Tiffany and more likely to believe that she did not report to work wanting Rallison to touch her. Then, in response to the friend laughing at Tiffany's fear, Tiffany explains that Rallison was "really rough" during a previous shift and made her nipple bleed. This is also not likely to cause much embarrassment or to have any effect other than to harm Rallison's case. The jury will then see that the discussion of hypothetical sexual activity with Rallison is initiated by the friend—who is also the one who calls Rallison "hot"—and that the friend uses crude imagery associated with herself—not Tiffany—related to hypothetical sexual activity with Rallison. Tiffany's response is ambiguous at best as far as expressing a desire to engage in sexual activity with Rallison, and it conveys a fear that he would force her to engage in sexual activity or fire her. In other words, while the fact of discussing such hypothetical sexual activity could be embarrassing, the embarrassment here lies mostly at the feet of Tiffany's friend, who is not one of the alleged victims. Accordingly, we feel that the risk of embarrassment to Tiffany is low, while the probative value to the issue of consent of the jury hearing Tiffany's fear, pain, and reluctance to work with Rallison is higher. Therefore, while we acknowledge that this item does reveal intimate information, we conclude that its probative value outweighs the risk of unfair prejudice. As to a risk of confusion, we are confident that an appropriate limiting instruction can guide the jury's proper use of this evidence. Thus, we decline the State's invitation to exclude this item on these alternative grounds.

## CONCLUSION

¶39    We agree with the district court that the admission of items 11 and 12—other than evidence that the cooks slapped each other on the buttocks—and evidence that servers showed nude selfies to the cooks is barred by rule 412(a) of the Utah Rules of Evidence. However, we conclude that the district court exceeded its

discretion in excluding items 9, 10, and 17—along with evidence in item 5 that the alleged victims showed Rallison nude selfies and evidence in item 12 of slapping between the cooks—and we reverse those rulings.

––––––––––